J. C. Penney Company, Appellant, vs. Tax Commission, Respondent.

*November 7, 1939—January 16, 1940.*

For the appellant there was a brief by *Ela, Christianson &
Ela* of Madison, and *Gwinn & Pell* of New York, N. Y.,
attorneys, and *Emerson Ela* of Madison, and *W. H. Dannat
Pell* and *Roswell Dean Pine, Jr.,* both of New York, N. Y.,
of counsel, and oral argument by *Mr. W. H. Dannat Pell,
Mr. Pine,* and *Mr. G. Burgess Ela.*

For the respondent there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and
oral argument by *Mr. Persons.*

ROSENBERRY, C. J.   The plaintiff is a Delaware corporation, having its statutory office at Wilmington, Delaware.

It is engaged in the business of operating a nation-wide chain of retail department stores, approximately one thousand five hundred in number. It is licensed to do business in the state of Wisconsin, but has no executive office of any kind located within the state. During the year 1934 it operated forty-seven stores in this state. In 1935 and 1936 it operated forty-eight stores in Wisconsin. During the year 1934, plaintiff had a total net income computed on the Wisconsin tax basis of $16,022,607, and in 1935, a total net income of $15,223,478. Applying the formula of the Wisconsin income tax statute (sec. 71.02), $562,331 of the 1934 income was allocable to Wisconsin business and $587,001 of the 1935 income was allocable to Wisconsin business. The plaintiff declared the following dividends:

On December 31, 1935, J. C. Penney Company declared a dividend of $2.25 per share, making total dividend payments of $5,555,214.

In 1936, J. C. Penney Company declared and paid the following dividends:

| Date Paid | Amount per Share | Total Amount Paid to Stockholders |
|---|---|---|
| 3/31/36 | $ .75 | $ 1,851,738 |
| 6/30/36 | .75 | 1,851,738 |
| 9/30/36 | 1.00 | 2,468,984 |
| 12/15/36 | 4.75 | 11,727,674 |

Pursuant to a notice of additional assessment, dated July 16, 1937, the Tax Commission assessed a privilege dividend tax which was ultimately adjusted at the sum of $23,586.79. The plaintiff duly filed its application for hearing and made objection to the assessment within the period prescribed by law.

The plaintiff operates its business in the following manner: The total proceeds from sales of goods in all its stores, including Wisconsin stores, are deposited in local banks. From such deposits payments are made,—pay rolls, rents, advertising, and other local expenses. The remainder not

needed for such expenses is ultimately transferred to the treasurer's office in New York City and deposited in New York banks to the credit of the company. No separate account is kept of the funds from the various states, and moneys after leaving the local banks completely lose their identity with respect to being derived from a particular source. From the funds deposited in New York, salaries, general overhead expenses in New York and other offices, taxes and dividends are paid. Checks are drawn in payment for all merchandise purchased and shipped to the various stores. All of the stock books, minute books, and secretary's records of the company are kept in the state of New York, except that a duplicate stock ledger is kept in Delaware as required by that state. All transfers of shares of stock are made by the New York transfer agent of the company; all directors' and stockholders' meetings are held in the state of New York, and all dividends are declared at such meetings. The actual payment of dividends is effected by checks drawn upon the accounts of the plaintiff company in New York, payable to the stockholders of record upon each dividend record date. Such checks are mailed to the post-office address of each stockholder as the same appears in the record. No act in connection with the payment of dividends was performed within the state of Wisconsin, and no act in connection with the receipt of such dividend was performed in the state of Wisconsin, except that certain stockholders of the company received their mail in this state. It appears from the evidence that three hundred ninety-one stockholders were residents of the state of Wisconsin as of the date of payment of the December 31, 1935, dividend as against a total of twelve thousand three hundred eighty-five stockholders. With respect to the dividend paid on December 15, 1936, there were four hundred six Wisconsin stockholders as against a total of thirteen thousand two hundred eighty-one stockholders. If the tax had been levied upon the basis finally adopted by the commission it would have

amounted to $274.54. The tax was levied pursuant to the provisions of sec. 3, ch. 505, Laws of 1935, as amended. This was the same as sec. 71.60, Stats. 1937, except the expiration date is July 1, 1937, instead of July 1, 1939. The law is as follows:

"Section 3. *Privilege Dividend Tax.* (1) For the privilege of declaring and receiving dividends, out of income derived from property located and business transacted in this state, there is hereby imposed a tax equal to two and one-half per centum of the amount of such dividends declared and paid by all corporations (foreign and local), except those specified in paragraphs (d) and (g) of subsection (1) of section 71.05 of the statutes, after the passage and publication of this act and prior to July 1, 1939. Such tax shall be deducted and withheld from such dividends payable to residents and nonresidents by the payor corporation.

"(2) Every corporation required to deduct and withhold any tax under this section shall, on or before the last day of the month following the payment of the dividend, make return thereof and pay the tax to the tax commission, reporting such tax on the forms to be prescribed by the tax commission.

"(3) Every such corporation hereby made liable for such tax, shall deduct the amount of such tax from the dividends so declared.

"(4) In the case of corporations doing business within and without the state of Wisconsin, such tax shall apply only to dividends declared and paid out of income derived from business transacted and property located within the state of Wisconsin. The amount of income attributable to this state shall be computed in accordance with the provisions of chapter 71. In the absence of proof to the contrary, such dividends shall be presumed to have been paid out of earnings of such corporation attributable to Wisconsin under the provisions of chapter 71, for the year immediately preceding the payment of such dividend. If a corporation had a loss for the year prior to the payment of the dividend, the tax commission shall upon application, determine the portion of such dividend paid out of corporate surplus and undivided profits

derived from business transacted and property located within the state. . . ."

The plaintiff contends that this law as applied to a foreign corporation doing business as plaintiff does business is invalid for the reason that it deprives the plaintiff of its property without due process of law in contravention of the Fourteenth amendment to the constitution of the United States and sec. 1, art. VIII, of the constitution of the state of Wisconsin. Stated specifically it is the contention of the plaintiff that the state of Wisconsin has no jurisdiction to impose an excise tax upon a transaction which takes place beyond its borders; that all of the acts of the plaintiff company in the declaration and payment of dividends and the acts of its stockholders in receiving them outside of the state are insufficient to confer jurisdiction to tax dividends declared by a corporation organized under the laws of a sister state. As already stated, only an inconsiderable part of the dividend is received through the mails by Wisconsin stockholders.

This court had the constitutionality of sec. 3, ch. 505, Laws of 1935, as amended, before it in *State ex rel. Froedtert G. & M. Co. v. Tax Comm.* (1936) 221 Wis. 225, 265 N. W. 672, 267 N. W. 52. That was an action for a declaratory judgment and was brought by a Wisconsin corporation. The court held that the tax imposed upon the Wisconsin corporation pursuant to the provisions of sec. 3, ch. 505, was a valid tax. In that case the court held that the language of the act—

"for the privilege of declaring and receiving dividends, out of income derived from property located and business transacted in this state, there is hereby imposed a tax equal to two and one-half per centum of the amount of such dividends declared or paid by all corporations (foreign and local)"—

imposed an excise or privilege tax upon the transaction involved of transferring the dividends from the corporation to its stockholders.

There was a motion for a rehearing in the *Froedtert Case* and briefs *amicus curiæ* were filed by counsel appearing on behalf of foreign corporations. While the application of the law to foreign corporations was not before the court upon the pleadings in the case, the court concluded to consider the validity of the act as applied to foreign corporations and held (p. 245) :

"We perceive no more difficulty in taxing the transfer of dividends of foreign corporations attributable to business transacted or property situated within the state than in taxing such corporations on income so derived, and the validity of the latter form of taxation is established. The fact that the dividends involved are derived from earnings within the state gives them a constructive situs within the state. They are as readily collectible as is an income tax against a foreign corporation. Liability for payment of the tax is imposed upon the corporation. If such liability may be imposed there is no difficulty about collecting it, and there is no more difficulty about imposing the liability than existed in the *Travis Case, supra,* about imposing upon the employer liability for the income tax on salaries of nonresidents earned within the state."

This decision of the court is vigorously assailed. We are earnestly besought to reconsider the decision of the *Froedtert Case* so far as it applies to foreign corporations. It is agreed on all sides that the tax in question is an excise tax and this court so held in the *Froedtert Case.* The court in effect held that the tax was an excise tax—

"for the privilege of declaring and receiving dividends out of income derived from property located and business transacted in this state,"—

and was therefore subject to the jurisdiction of the state as are incomes and inheritances. It is apparent that upon this basis the tax imposed by sub. (1) of sec. 3 of the act, cannot be imposed upon dividends declared by a foreign corporation because they are not declared within this state nor is the privilege one granted by this state. To meet this objection on the

motion for rehearing the court held that a dividend declared by a foreign corporation was taxable to the extent that it was allocable to business transacted or property situated in this state because the dividend involved the distribution of earnings made within the state and such earnings had a constructive situs within the state.

Since the decision was rendered in the *Froedtert Case,* on May 4, 1936, the supreme court of the United States has considered and decided *Connecticut General Life Ins. Co. v. Johnson* (1938), 303 U. S. 77, 58 Sup. Ct. 436, 82 L. Ed. 673. The appellant in that case was a Connecticut corporation, admitted to do an insurance business in California. In addition to its business conducted within that state, it entered into contracts with other insurance corporations likewise licensed to do business in California, reinsuring them against loss on policies of life insurance effected by them in California and issued to residents there. These reinsurance contracts were entered into in Connecticut where the premiums were paid and where the losses, if any, were payable. Sec. 14 of art. XIII of the constitution of the state of California as supplemented by legislative enactment, lays upon every insurance company doing business within the state an annual tax of 2.6%—

"upon the amount of the gross premiums received upon its business done in this state, less return premiums and reinsurance in companies or associations authorized to do business in this state."

It is apparent from a consideration of this provision that if reinsurance premiums are paid to companies or associations not authorized to do business within the state of California, no deduction is made from the amount of the gross premium received and the amount of the gross premium becomes the measure of the tax. When, however, a part of the gross premium received and paid within the state of California is paid to a company authorized to do business in California,

the amount so paid for reinsurance is deductible from the gross premium received. It would seem that where the tax was solely upon a premium earned in the state of California paid for reinsurance to another company authorized to do business in California, that it might be held California retained jurisdiction for the purposes of imposing a tax upon the reinsurance premium so paid. The supreme court of California pointed out that the provision for the deduction was intended to avoid double taxation without any loss of revenue to the state; that for the purpose of accomplishing that end the deduction of reinsurance premiums paid to the companies authorized to do business in the state is allowed on the theory that the burden will be passed on to the reinsurer who, being authorized to do business in the state, will be taxed on the reinsurance premiums as a means of equalizing the tax.

The supreme court of the United States, however, held that a reinsurance transaction which took place within the state of Connecticut, was not subject to taxation by California, although the transaction dealt entirely with California business, both parties to the transaction being authorized to do business within the state of California and the entire amount of the reinsurance premium was earned in California.

The reason for the invalidity of the tax was stated by the supreme court of the United States in the following language (p. 80):

"But the limits of the state's legislative jurisdiction to tax, prescribed by the Fourteenth amendment, are to be ascertained by reference to the incidence of the tax upon its objects rather than the ultimate thrust of the economic benefits and burdens of transactions within the state. As a matter of convenience and certainty, and to secure a practically just operation of the constitutional prohibition, we look to the state power to control the objects of the tax as marking the boundaries of the power to lay it. Hence it is that a state which controls the property and activities within its bounda-

ries of a foreign corporation admitted to do business there may tax them. But the due-process clause denies to the state power to tax or regulate the corporation's property and activities elsewhere. [Citing.] It follows that such a tax, otherwise unconstitutional, is not converted into a valid exaction merely because the corporation enjoys outside the state economic benefits from transactions within it, which the state might but does not tax, or because the state might tax the transactions which the corporation carries on outside the state if it were induced to carry them on within."

In the *Froedtert Case* we rejected the contention that the tax was a tax on property (p. 235), and rested the right of Wisconsin to tax the dividend in question on the ground that that part of the dividend taxed having been earned within the state, the transaction of declaring and receiving the dividend had a situs within the state, although the transaction took place in another state. In the *Connecticut General Life Ins. Co. Case, supra,* the supreme court of the United States made the further statement (p. 81) :

"Apart from the facts that appellant was privileged to do business in California, and that the risks reinsured were originally insured against in that state by companies also authorized to do business there, California had no relationship to appellant or to the reinsurance contracts. No act in the course of their formation, performance or discharge, took place there. The performance of those acts was not dependent upon any privilege or authority granted by it, and California laws afforded to them no protection.

"The grant by the state of the privilege of doing business there and its consequent authority to tax the privilege do not withdraw from the protection of the due-process clause the privilege, which California does not grant, of doing business elsewhere. [Citing.] Even though a tax on the privilege of doing business within the state in insuring residents and risks within it may be measured by the premiums collected, including those mailed to the home office without the state [Citing], and though the writing of policies without the state insuring residents and risks within it is taxable because within the granted privilege [Citing], there is no basis for saying that reinsurance which does not run to the original insured, and

which from its inception to its termination involves no action taken within California, even the settlement and adjustment of claims, is embraced in any privilege granted by that state. [Citing.] All that appellant did in effecting the reinsurance was done without the state and for its transaction no privilege or license by California was needful. The tax cannot be sustained either as laid on property, business done, or transactions carried on within the state, or as a tax on a privilege granted by the state."

This determination of the supreme court of the United States clearly holds that the fact that a fund which became the subject of a transaction in the state of Connecticut was earned within the state of California and might have been taxed there, does not give the transaction in Connecticut a situs within the state of California for the purposes of taxation. In our view the California case is a stronger case for jurisdiction to tax by a state than is the present case because in that case nothing but insurance premiums paid in California were dealt with and in levying the tax upon the company which did the business in California the amount of the reinsurance premiums was deducted in cases where the reinsurance premium was paid to a company authorized to do business in California. In both cases the thing taxed is a transaction without the state made pursuant to a privilege or right granted by another state measured by the amount of a fund earned in the taxing state. Under the *Connecticut General Life Ins. Co. Case, supra,* there being no constructive situs within the state of Wisconsin for the taxation of the transaction of declaring and receiving dividends in the state of New York, there is no basis for an excise tax within the state of Wisconsin upon the dividend in question. Certainly the payment of a reinsurance premium on business done in the state of California to a company authorized to do business in California is more closely connected to California business than is the declaration of a dividend in the state of New York although that part of the dividend taxed accrued

from earnings made in Wisconsin. If there is no situs for taxation purposes in the one case there certainly is not in the other. We are obliged to hold that the transaction of declaring and receiving the dividend in question was not taxable in the state of Wisconsin.

Diligent and able counsel for the state have been unable to suggest any other basis upon which the tax involved in this case can be sustained than that suggested in the *Froedtert Case*. We have given the matter thorough and careful consideration because of the importance of the question involved and the effect a ruling adverse to the defendant will have upon state finances. While there is much to be said for the proposition that a foreign corporation admitted to do business in Wisconsin should be subject to the same burdens and liabilities as is a similar Wisconsin corporation, we must in the determination of this question conform to the law as laid down by the supreme court of the United States. The question here involved is one of the incidence of taxation and not whether the state has jurisdiction of certain corporate activities by reason of a business situs of a corporation. No claim is made that the plaintiff has any such situs nor is there any evidence in the record upon which such a claim can be based.

We are strongly urged to affirm the judgment in this case because the state treasury is dependent upon the maintenance of the right of the state to tax dividends of foreign corporations to the extent that such dividends are derived from earnings within the state. The matter of financial exigencies of the state, however, afford no justification for the ignoring of a rule of law laid down by the United States supreme court. The state must find its revenues within the field within which its taxing power may be exerted as prescribed by the constitution and laws of the United States.

It is hardly necessary to say that the considerations which require us to hold sec. 3 of the act, sec. 71.60, Stats., to be invalid when applied to foreign corporations have no appli-

cation to the declaring and receiving of dividends of a Wisconsin corporation. It has been suggested that if the section is invalid as applied to foreign corporations, it should be held invalid as a whole because of the fact that it creates a discrimination as respects tax liability between domestic and foreign corporations in this respect, Wisconsin earnings of a domestic corporation may be taxed under the section while Wisconsin earnings of a foreign corporation wholly escape taxation under the section.

Sec. 4 of the act, sec. 71.60, Stats., provides:

"If any section, subsection, paragraph, provision or part of this act, or its application to any person or circumstance shall be held unconstitutional, such decision shall not affect the constitutionality of any other section, subsection, paragraph, provision or part, or its application to other persons or circumstances."

While this declaration of legislative policy is not absolutely controlling upon the court, it will not be ignored except in a case where it clearly appears that the remainder of the act is dependent on the part held invalid. The effect of the statute is merely to reverse the presumption of inseparability which ordinarily obtains and to create the opposite one of separability. *Carter v. Carter Coal Co.* (1936) 298 U. S. 238, 312, 56 Sup. Ct. 855, 80 L. Ed. 1160; *Mazurek v. Farmers' Mutual Fire Ins. Co.* (1935) 320 Pa. 33, 181 Atl. 570, 102 A. L. R. 798.

Whatever the economic effect may be, it is plain that the application of the act to Wisconsin corporations is not legally dependent on its application to foreign corporations. The legislature has declared in the most emphatic language that one may stand without the other. We discover no ground upon which it may be said the legislative declaration is not controlling in this case.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment setting aside the assessment.

FOWLER, J. (*dissenting*). This court held in *State ex rel. Froedtert G. & M. Co. v. Tax Comm.* (1936) 221 Wis. 225, 265 N. W. 672, 267 N. W. 52, that the statute involved herein was constitutional, and the instant decision reiterates that holding as applied to Wisconsin corporations. The instant decision holds that as applied to corporations organized under the laws of sister states declaring dividends outside the state resulting from business conducted in this state the statute is unconstitutional. The instant ruling is based upon the ruling of the supreme court of the United States in the case of *Connecticut General Life Ins. Co. v. Johnson* (1938), 303 U. S. 77, 58 Sup. Ct. 436, 82 L. Ed. 673. A ruling of the supreme court of the United States on a question under the constitution of the United States governs the ruling of this court in a case that involves the same state of facts. But a decision in one case does not govern the decision of another unless the facts of the latter are so like those in the former as to render the reason of the former as applicable to the latter as to the former. Thus it is that the decision in the case cited does not govern the decision in the instant case if the facts of the instant case can be so differentiated as to render the reason of that case inapplicable here.

It is quite true that the *Connecticut General Life Ins. Co. Case, supra,* rules this case if we take literally statements of the opinion in that case, quoted in the instant opinion, and apply them to the factual situation here involved. But the instant factual situation, while in some respects similar, is, as I view it, materially different in one respect from that involved in that case. It is said in the opinion in that case that (p. 80) "the due-process clause denies to the state power to tax . . . the corporation's property and activities elsewhere." The reason for that statement is stated to be that jurisdiction of the state of California to impose the tax is (p. 80) "to be ascertained by reference to the incidence of the tax upon its objects." The object of the California tax was the reinsurance premium received and contracted for in

the state of Connecticut. The receipt and the contract were in no way connected with, in no way incidental to any transaction of the insurance company in California, and were in no way connected with or incidental to any earnings of the company from business conducted in California. The object of the instant tax is the declaration of a dividend made in New York on earnings of the plaintiff corporation through business transacted in the state of Wisconsin. The declaration of the instant dividend was connected with, was incidental to, related back to, the business conducted in Wisconsin on the earnings of which the tax was computed. The reason for the invalidity of the California tax does not apply to the instant case. The reason not applying, neither does the rule. So at least it seems to me. Under this concept, the statute here involved remains valid unless subsequently declared invalid by the supreme court of the United States.

The tax here involved is laid upon the declaration of dividends upon corporate earnings within this state. It seems to me that if such a tax may be laid upon the declaration of dividends so earned by a Wisconsin corporation within the state, it may perforce be laid upon the declaration of dividends so earned by a foreign corporation, regardless of whether the dividends be declared within or without the state. A Wisconsin corporation conducting a business in Wisconsin at Beloit would be subject to taxation upon a declaration of dividends based upon its earnings within the state, regardless of whether the declaration was made in Beloit or across the state line in Illinois at South Beloit. The directors declaring the dividend could not escape the tax merely by crossing the state line to declare it. To permit this would be to exalt the mere mechanics of the matter over the reason of it. Nor, by the same token, as it seems to me, is it material whether the declaration of dividends based on earnings made in Wisconsin, are declared in Wisconsin or in New York or Dela-

ware. No corporation of one state, that comes into another state and does business there in competition with corporations of that state, should be permitted to escape any taxation with which the corporations of that state with which it competes are burdened merely because it is organized under the laws of another state or because it receives or holds or handles its Wisconsin earnings in another state. To permit corporations merely by organizing in one state and going into other states to conduct their operations to escape burdens of taxation or other disadvantages to which local corporations with which they compete are subject under the laws of the state in which they operate is wrong in principle.

Some tax decisions of the supreme court of the United States rendered since *Connecticut General Life Ins. Co. v. Johnson, supra,* was decided, and some rendered shortly before, seem to me to show that notwithstanding what is said in the opinion in that case, the plaintiff herein has a tax situs in Wisconsin for the imposition of the instant tax.

*Newark Fire Ins. Co. v. State Board,* 307 U. S. 313, 59 Sup. Ct. 918, 83 L. Ed. 1312, sustained the taxation in New Jersey of the paid-up capital stock and surplus of a New Jersey corporation which kept its main office in New York and there kept its securities and the bulk of its cash. Mr. Justice REED wrote an opinion concurred in by three other members of the court. This opinion refers to the "fiction" by which intangibles have become taxable in a jurisdiction where the corporation has acquired a "tax situs." It is said (p. 321), as the reason for recognition of such tax situs, that—

"The conception of a business situs for intangibles enables the tax gathering entity to distribute the burden of its support equitably among those receiving its protection. It makes the notion of a tax situs for particular intangibles more definite. It is not the substitution of a new fiction as to the mass of choses in action for the established fiction of a tax situs at the place of incorporation. To overcome the presumption of

domiciliary location, the proof of business situs must definitely connect the intangibles as an integral part of the local activity."

The tax involved in that case was a property tax, but the same reason that applies to a tax situs for property taxation of intangibles applies for establishing a tax situs for the purpose of excise taxation when, as in the instant case, the thing taxed is "definitely connected" "as an integral part of the local activity." The basis of the taxation of appellant herein is that the declaration of the dividend on which the excise tax against the corporation is based is so definitely connected as an integral part of the local activity of the taxpayer in earning the dividends on which the tax is computed as to give it a tax situs in Wisconsin.

In this case Mr. Justice FRANKFURTER also wrote an opinion, also concurred in by three other justices, in which it is said in respect of interference with taxation by the states (p. 323) :

"Wise tax policy is one thing; constitutional prohibition quite another. The task of devising means for distributing the burdens of taxation equitably has always challenged the wisdom of the wisest financial statesmen. Never has this been more true than today when wealth has so largely become the capitalization of expectancies derived from a complicated network of human relations. The adjustment of such relationships, with due regard to the promotion of enterprise and to the fiscal needs of different governments with which these relations are entwined, is peculiarly a phase of empirical legislation. It belongs to that range of the experimental activities of government which should not be constrained by rigid and artificial legal concepts. Especially important is it to abstain from intervention within the autonomous area of the legislative taxing power where there is no claim of encroachment by the states upon powers granted to the national government. It is not for us to sit in judgment on attempts by the states to evolve fair tax policies. When a tax appropriately challenged before us is not found to be in plain violation of the constitution our task is ended."

In *Smith v. Ajax Pipe Line Co.* (8th Cir.) 87 Fed. (2d) 567, it was held that a Delaware corporation keeping its funds in a bank in New York but having its principal place of business in Missouri and keeping its books and records there had a tax situs in Missouri, and that the state of Missouri might tax its bank deposits kept in New York. Similarly in *First Bank Stock Corp. v. Minnesota,* 301 U. S. 234, 57 Sup. Ct. 677, 81 L. Ed. 1061, Minnesota was permitted to tax a Delaware corporation on stock in Montana and Dakota banks. It is said on page 241 of the opinion:

"We have recently had occasion to point out that enjoyment by the resident of a state of the protection of its laws is inseparable from responsibility for sharing the costs of its government."

The reason back of the rule permitting taxation of a corporation of one state to be taxed in another state on its intangibles attributable to business in that other state is as stated in the above quotation. That reason applies just as aptly and just as strongly to uphold the excise tax here involved and upon that reason the instant tax should be upheld.

The case of *Curry v. McCanless,* 307 U. S. 357, 59 Sup. Ct. 900, 83 L. Ed. 1339, bears upon the question here involved. It deals with an excise tax based on devolution of intangibles by death. A resident of Tennessee created a trust whereby securities were given to trustees residing in Alabama for purposes declared in the instrument of trust. The donor by the instrument of trust reserved to herself the right to dispose of the corpus by will. By her will she bequeathed the corpus to the trustees with direction to turn it over to residents of Alabama. Tennessee based a death tax upon the exercise by the donor of the power of appointment by will. Alabama imposed a death tax upon the trustees in Alabama. The question involved was whether both states might impose the tax and it was held that they might. That the devolution of the intangibles occurred in Tennessee,

where the donor resided at her death, did not deprive the state of Alabama from imposing a tax on that devolution. The thing that transferred the intangibles and the right to them was the will activated by the donor's death. The thing that effected the transfer occurred in one state, yet the transfer was taxable in the other. I see no more reason why the mere fact in the instant case that the devolution resulting from the declaration of the dividend occurred in New York should defeat the devolution tax imposed by Wisconsin than that the mere fact that the occurrence of the devolution in Tennessee should defeat the Alabama tax. The connection between the devolution and the Alabama taxpayer's acquisition made the devolution to him taxable although that devolution occurred in Tennessee. By the same token the connection between the declaration of the dividend in New York and the earning of those dividends in Wisconsin made the devolution effected by the declaration of the dividend in New York taxable in Wisconsin.

In *Ford Motor Co. v. Beauchamp*, 308 U. S. 331, 334, 60 Sup. Ct. 273, 84 L. Ed. —, decided December 11, 1939, an excise or franchise tax imposed by the state of Texas upon a foreign corporation doing business in that state and the other states of the United States was sustained. The tax was based upon the proportion of the corporation's capital employed in Texas computed on the percentage of the corporation's sales made within Texas. In the opinion of the court it is said:

"The exploitation by foreign corporations of intrastate opportunities under the protection and encouragement of local government offers a basis for taxation as unrestricted as that for domestic corporations. In laying a local privilege tax, the state sovereignty may place a charge upon that privilege for the protection afforded. When that charge, as here, is based upon the proportion of the capital employed in Texas, calculated by the percentage of sales which are within the state, no provision of the federal constitution is violated."

The statement next above quoted, down to the last sentence thereof, applies verbatim to the instant case. The last sentence may be paraphrased: "When that charge, as here," is based upon the amount of business done in Wisconsin, "no provision of the federal constitution is violated."

For the reasons above stated I think the judgment of the circuit court should be affirmed.