RAMROD, INC., Appellant, v. DEPARTMENT OF REVENUE, Respondent.

*No. 93.  Argued June 5, 1974.—Decided June 28, 1974.*
(Also reported in 219 N. W. 2d 604.)

500

For the appellant there was a brief by *Daniel W. Hildebrand*, and *Ross, Stevens, Pick & Ross*, all of Madison, and oral argument by *Mr. Hildebrand*.

For the respondent the cause was argued by *Allan P. Hubbard*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

CONNOR T. HANSEN, J. The issues presented in this case are determined upon stipulated facts.

The taxpayer, a Wisconsin corporation, was engaged in the dry-cleaning business until September 12, 1969. A seller's permit had been previously issued to the taxpayer for this business pursuant to sec. 77.52, Stats. On September 12, 1969, the taxpayer "ceased operation" of this business by the sale of the tangible personal business property to one Harris for $44,388.93. At oral argument, it was acknowledged that Harris continued the operation of the dry-cleaning business as the new owner. The taxpayer's sales tax returns did not report the sale of this property. The department assessed a general sales tax against this sale in the amount of $1,775.56, and this litigation ensued.

#### Issues.

The issues presented are:

1. Was the sale of business assets an exempt "occasional sale" under secs. 77.54 (7) and 77.51 (10) (a), Stats.?

2. If the sale of business assets was not exempt from sales tax, was appellant denied due process and equal protection of the law and denied uniform and reasonable taxation pursuant to art. VIII, sec. 1, Wisconsin Constitution?

#### Occasional sale.

We would first observe, as did the trial judge, that the Wisconsin sales tax is a tax generally described as a "privilege" tax, a tax imposed upon the privilege of

selling, performing or furnishing services. It is not disputed that it applies to services such as dry cleaning, nor that the taxpayer held a "seller's permit" at the time of the sale. Secs. 77.51 and 77.52, Stats. The point being that the sales tax is not a property tax assessed against personal property.

The taxpayer claims exemption from the general sales tax assessment. It argues that the sale of the personal property was an "occasional sale," and therefore exempt from the imposition of a sales tax.

Sec. 77.54, Stats., contains general exemptions from the taxes imposed by ch. 77, subchapter III, and sec. 77.54 (7) provides the "occasional sale" exemption which is the center of this controversy:

"(7) The *occasional sales of tangible personal property and services and the storage, use or other consumption in this state of tangible personal property, the transfer of which to the purchaser is an occasional sale,* except that the exemption herein provided shall, in the case of motor vehicles, boats or aircraft registered or required to be registered in this state, be limited to motor vehicles, boats or aircraft transferred to the spouse, mother, father or child of the transferor and then only if such motor vehicle, boat or aircraft has been previously registered in this state in the name of the transferor and the person selling is not engaged in the business of selling the type of property for which exemption is claimed." (Emphasis supplied.)

The appellant has maintained throughout the proceedings below, and also argues in this appeal, that the sale of his dry-cleaning equipment was an occasional sale and not subject to sales tax. Sec. 77.51 (10), Stats., defines "occasional sales" in a variety of ways, including the following definition:

"(10) 'Occasional sales' includes:
"(a) Isolated and sporadic sales of tangible personal property or taxable services where the infrequency, in relation to the other circumstances, including the sales

price and the gross profit, support the inference that the seller is not pursuing a vocation, occupation or business or a partial vocation or occupation or part-time business as a vendor of personal property or taxable services. *No sale of any tangible personal property or taxable service may be deemed an occasional sale if at the time of such sale the seller holds or is required to hold a seller's* permit." (Emphasis supplied.)

It is a long-established rule of statutory construction in this state that tax exemptions, deductions and privileges are matters of legislative grace and tax statutes are to be strictly construed against the granting of the same. One who claims such an exemption must point to an express provision granting such exemption and bring himself clearly within the terms of the exemption. *Fall River Canning Co. v. Department of Taxation* (1958), 3 Wis. 2d 632, 637, 89 N. W. 2d 203; *Comet Co. v. Department of Taxation* (1943), 243 Wis. 117, 9 N. W. 2d 620. We consider the foregoing recognized rule of statutory construction to be applicable to the factual situation presented in this case.

The taxpayer directs our attention to *National Amusement Co. v. Department of Revenue* (1969), 41 Wis. 2d 261, 163 N. W. 2d 625. We are of the opinion the rule of statutory construction enunciated in *National Amusement Co.* is not applicable to one claiming an exemption. Rather the rule therein set forth relates to the taxing authority applying the taxing legislation in the first instance. *National Amusement Co., supra,* pages 266, 267, holds that:

" '. . . no judicial rule of construction is permitted, and the court must arrive at the intention of the legislature by giving the language its ordinary and accepted meaning.' . . .

" '. . . a tax cannot be imposed without clear and express language for that purpose, and where ambiguity and doubt exist, it must be resolved in favor of the person upon whom it is sought to impose the tax.' . . ."

Furthermore, sec. 77.52 (13), Stats., provides:

"(13) For the purpose of the proper administration of this section and to prevent evasion of the sales tax it shall be presumed that all receipts are subject to the tax until the contrary is established. The burden of proving that a sale of tangible personal property or services is not a taxable sale at retail is upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property or service is purchased for resale or is otherwise exempt."

The provisions of secs. 77.54 (7) and 77.51 (10) (a), Stats., are clear and unambiguous.

Both parties to this appeal direct our attention to decisions of the tax appeals commission. *The Kroger Co. v. Wisconsin Department of Revenue* (October 1, 1970), Docket #S–2736, par. 200–637, CCH Wisconsin Tax Reporter, 8 WTAC 187; *Shore Club, Inc. v. Wisconsin Department of Revenue* (March 30, 1972), Docket #S–3355, par. 200–800, CCH; *Matuszeski v. Wisconsin Department of Revenue* (December 28, 1971), Docket #S–3499, par. 220–755, CCH; *Three Lions Supper Club, Ltd. v. Wisconsin Department of Revenue* (November 29, 1973), Docket #S–4295, par. 200–960, CCH. We have considered these decisions in arriving at our interpretation of the statutory provisions at issue in this case.

In *Kroger, supra,* the tax appeals commission determined that sale of fixtures or equipment no longer in use and sold during the period of July 1, 1963, through June 30, 1967, were occasional sales not made in the regular course of business, hence not taxable transactions. However, those sales were made under the then existing definition of occasional sale under sec. 77.51 (10) (a), Stats. 1967. Sec. 228 of ch. 154, Laws of 1969, repealed and re-created sec. 77.51 (10) (a), and to sec. 77.51 (10) (a), as re-created, was added the following:

"No sale of any tangible personal property or taxable service may be deemed an occasional sale if at the time

of such sale the seller holds or is required to hold a seller's permit."

Shore Club, Inc., supra; Matuszeski, supra, and Three Lions Supper Club, Ltd., supra, were decided by the tax appeals commission after sec. 77.51 (10) (a), Stats., was amended and re-created. Each of the three cases involved the sale of business personal property and the commission held that the property so sold was not exempt as an occasional sale under the language of the statute as it now exists. The rationale of the commission in these three cases as it applies to the particular factual situations herein presented commends itself to this court.

The taxpayer also argues that the last sentence of sec. 77.51 (10) (a), Stats., is not applicable to it because its permit was issued for the purpose of selling laundry and dry-cleaning services, and not for the sale of its personal property assets, and also that once its business operations ceased the permit was cancelled by operation of law.

We quote with approval the following paragraph from the decision of the trial judge:

"Petitioner argues that the seller's permit it held was issued for the sale of dry-cleaning services and was not issued for sale of its machinery and equipment. This argument is apparently grounded upon the fact that in petitioner's application for a seller's permit to the Department dated August 12, 1965, it wrote 'Dry Cleaning' in Item 9 of the application blank, the printed words of which read, 'Kinds of Taxable Merchandise or Service You Intend to Sell (if mixed underline principal kind).' The sellers' permits which the Department issues pursuant to sec. 77.52 (9), Stats., are not limited to the particular kinds of described merchandise or services set forth in the application for permit. The Court holds that the seller's permit held by petitioner on September 12, 1969, was not limited to the sale of dry-cleaning services but was general in nature. Therefore, petitioner when it made the sale to Harris on September 12, 1969, possessed a 'seller's permit' within the meaning of the last sentence of sec. 77.51 (10) (a), Stats., as previously

quoted herein. Thus it did not qualify as an occasional sale under secs. 77.54 (7) and 77.51 (10) (a), Stats."

We are also of the opinion that the taxpayers argument that this sale was exempt because its seller's permit was cancelled "by operation of law," under sec. 77.52 (12) and (9), Stats., is without substance. Sec. 77.52 (12) provides that sales permits shall be held only by persons "actively operating" as sellers. It is urged by the taxpayer that once it ceased operations, it was no longer actively operating and thus its permit was automatically cancelled. We find no provision in the statute for an "automatic" cancellation of a seller's permit. Sec. 77.52 (12) provides that the taxpayer shall ". . . forthwith surrender his permit . . ." when it ceases to operate as a seller. In the instant case the permit had not been surrendered at the time of the sale. Also the last sentence of sec. 77.52 (12), provides: ". . . The department may revoke the permit of a person found not to be actively operating as a seller of tangible personal property or taxable services." In the instant case, there is no evidence of revocation of the seller's permit.

We also find that an unsuccessful attempt was made during the 1971 session of the legislature to amend sec. 77.51 (10) (a), Stats., by the introduction of Senate Bill 143, which proposal would have changed the last sentence of the section to read as follows:

". . . No sale of any tangible personal property or taxable service may be deemed an occasional sale if at the time of such sale the seller holds or is required to hold a seller's permit, *except where such sale of tangible personal property is not in the normal course of the activity for which the seller's permit was originally required and is of such infrequency or magnitude that if* [sic] *could not be construed to be the seller's vocation, occupation or business, either full or part-time, and where such sale terminates or significantly changes the activity for which the original seller's permit was issued."*

The taxpayer has directed our attention to decisions from other jurisdictions on exempt occasional sales. We find them to be of little assistance because none of them contain language comparable to the last sentence of sec. 77.51 (10) (a), Stats.

The taxpayer held a sales permit at the time of the sale and has not demonstrated that it clearly comes within the terms of the occasional sale exemption.

## Constitutionality.

The taxpayer contends that he was denied equal protection under the law and of due process, and because the statute creates an unreasonable exemption it is in violation of art. VIII, sec. 1, of the Wisconsin Constitution.

Appellant's equal protection argument is based to a large extent upon *Will of LeFeber* (1937), 223 Wis. 393, 271 N. W. 95. In that case the court struck down as unconstitutional a new law which by its terms imposed, in addition to all other inheritance taxes, an emergency tax for relief purposes upon all transfers of property taxable under the normal inheritance tax statutes, which were made subsequent to June 30, 1934, and prior to January 1, 1935. The tax was equal to 25 percent of the excess of the normal tax over $1,500. The law, after imposing the tax, expressly provided that it should not apply to any transfers of property in estates closed at the time of its enactment. LeFeber died September 15, 1934, and his estate was not closed when the section was enacted on September 21, 1935. Other statutes had recently been enacted in Wisconsin which imposed such inheritance taxes for emergency relief but which did not cover the period between June 30, 1934, to March 14, 1935. The new law covered the period between June 30, 1934, and January 1, 1935, but failed to include the seventy-three day period between January 1, 1935, and March 14, 1935.

This court held that the new law was discriminatory for the reason that it excluded this period and because it created an arbitrary and discriminatory classification by excluding from its coverage those estates which were closed when the law became effective.

Perhaps the most obvious distinction between *Will of LeFeber, supra,* and the instant case is that appellant in the case *sub judice* had the choice of terminating his business operations and surrendering his sales permit in order to prevent the last sentence of sec. 77.51 (10) (a), Stats., from disqualifying him from this exemption (although the department argues it would have made no difference if he had surrendered his permit, and we do not reach this issue on this appeal). In *Will of LeFeber, supra,* the taxpayer had no control over when he died or when his estate was eventually closed.

In *Simanco, Inc. v. Department of Revenue* (1973), 57 Wis. 2d 47, 54, 55, 203 N. W. 2d 648, this court recently stated:

"There is, however, a strong presumption that legislative enactments are constitutional, and the burden on one asserting the unconstitutionality of a properly enacted statute is heavy indeed. *Just v. Marinette County* (1972), 56 Wis. 2d 7, 26, 201 N. W. 2d 761; *State ex rel. Warren v. Reuter* (1969), 44 Wis. 2d 201, 211, 170 N. W. 2d 790.

"Moreover, where a tax measure is involved, the presumption of constitutionality is strongest. The courts have given recognition to the essentiality of taxation in preserving an ordered society, and there is implicit recognition in judicial decisions that the principle of absolute equality and complete congruity of the treatment of classifications is impossible and must be sacrificed in the interests of preserving the governmental function.

"This court has recognized that the equal-protection clause, unless apparent misclassifications are gross indeed, is of little moment in determining the constitutionality of a state tax. In *Hillside Transit Co. v. Larson* (1954), 265 Wis. 568, 583, 62 N. W. 2d 722, the position

of the court was well-summarized by Mr. Justice CURRIE, who stated:

" '. . . a legislature has much more leeway in granting exemptions in taxation measures than it does in regulatory measures under its police power without running athwart the equal-protection-of-the-laws clause of the Fourteenth amendment.' "

Appellant argues that under no circumstances can administrative convenience itself justify the imposition of this tax. Respondent argues that the legislature has drawn a distinction between those taxpayers who hold sales permits and those who do not due to the practicality of administration. Administrative convenience can and does in the eyes of the legislature often serve as a valid basis upon which it is determined that a tax should be levied on a particular transfer.

In *Carmichael v. Southern Coal Co.* (1937), 301 U. S. 495, 57 Sup. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327, the court upheld the Unemployment Compensation Act of Alabama. That tax law applied to those who had more than seven employees; those employers who employed seven or less were exempt from its application. The United States Supreme Court explained that the expense and inconvenience of collecting tax from small employers was greater than it was with respect to large employers and held as follows:

"Administrative convenience and expense in the collection or measurement of the tax are alone a sufficient justification for the difference between the treatment of small incomes or small taxpayers and that meted out to others. [Citations omitted.] We cannot say that the expense and inconvenience of collecting the tax from small employers would not be disproportionate to the revenue obtained. For it cannot be assumed that the legislature could not rightly have concluded that generally the number of employees bears a relationship to the size of the payroll and therefore to the amount of the tax, and that the large number of small employers and the

paucity of their records of employment would entail greater inconvenience in the collection and verification of the tax than in the case of larger employers.

"It would hardly be contended that the state, in order to tax payrolls, is bound to assume the administrative cost and burden of taxing all employers having a single employee. But if for that or any other reason it may exempt some, whether it should draw the line at one, three, or seven, is peculiarly a question for legislative decision. The decision cannot be said to be arbitrary because it falls in the twilight zone between those members of the class which plainly can and those which plainly cannot expediently be taxed." *Carmichael v. Southern Coal & Coke Co., supra,* pages 511, 512.

In *Rapid Transit Corp. v. New York* (1938), 303 U. S. 573, 58 Sup. Ct. 721, 82 L. Ed. 1024, rehearing denied 304 U. S. 588, 58 Sup. Ct. 939, 82 L. Ed. 1548, the United States Supreme Court also upheld the validity of a separate classification of public utility companies, which were required to file certain reports with the state department of public service. The court said, in part, "Several reasons may be suggested for the selection for special tax burdens of the utilities embraced by the Local Laws under discussion. We mention a few. . . . Reports which must be filed with the department of public service on the basis of approved systems of accounting suggest an administrative convenience in the collection and verification of the tax which might properly have been taken into account by the City's legislature. *See Carmichael v. Southern Coal & Coke Co.,* 301 U. S. 495, 511, and cases cited." *Rapid Transit Corp., supra,* pages 580, 581.

The object of the tax in this case is to raise revenues as it was in *Rapid Transit Corp., supra,* and appellant's arguments have failed to rebut the strong presumption of constitutionality accorded such tax provisions. The legislature has the power to define and limit tax exemptions in any reasonable manner they see fit. Appellant stands in

the same position as any businessman who operates under the requirements of a sales permit.

The trial court correctly concluded that ". . . a rational basis exists to justify the classification made in the last sentence of sec. 77.51 (10) (a), Stats., which denies an occasional sale exemption to the holder of a seller's permit." It could also be observed that such a provision serves to compel one who is not actively operating as a seller to "forthwith surrender" his permit as he is required to do under sec. 77.52 (12), Stats. Thus, in addition to the purpose of administrative convenience, the new law also served the purpose of compelling businessmen to otherwise comply with the law.

Appellant also argues that he was denied due process of law because the statute creates an irrebuttable presumption. In view of the wide latitude enjoyed by the legislature in defining and limiting tax exemptions, we agree with the trial court's determination that this provision does not create a presumption at all but merely defines "occasional sale" in a very limited and unique manner.

Appellant also argues that this last sentence in sec. 77.51 (10) (a), Stats., which prohibits the occasional sale exemption when a seller's permit is held, is unreasonable and contrary to art. VIII, sec. 1 of the Wisconsin Constitution. Art. VIII, sec. 1, provides in part as follows:

". . . Taxes may also be imposed on incomes, privileges and occupations, which taxes may be graduated and progressive, and reasonable exemptions may be provided."

The Wisconsin legislature has chosen to limit this occasional sale exemption by statutory definition.

Timing is a key factor in taking advantage of many tax exemptions and certainly the legislature cannot be faulted for incorporating this requirement into the exemption.

If the results may on occasion lead to somewhat unintended results as intimated by appellant, that is a matter to be cured by legislation. Substantial increased tax revenues have been generated as a result of narrowing the application of this sales tax exemption for businessmen. (*See: Shore Club, Inc. v. Wisconsin Department of Revenue, supra,* which indicates approximately $600,000 to $700,000 in increased sales tax revenues realized between July 1, 1970, and June 30, 1971, according to the Chief of Central Compliance, L. H. Erickson, Wis. Dept. of Rev.)

Appellant also argues that this law creates a double sales tax. This argument lacks merit because even upon willful failure to surrender the sales permit and otherwise come within the occasional sale exemption, it is clear that a businessman can simply pass this tax on to the purchaser as is done in most every case where the sales tax is imposed. Sec. 77.52 (3), Stats.

"Double taxation is not only to be avoided, but the intention of the legislature to impose it will not be presumed. Before a tax statute will be interpreted as providing for double taxation, the intention so to do must be shown by clear and unequivocal language which leaves no doubt as to the legislative intent." 71 Am. Jur. 2d, *State and Local Taxation,* pp. 364, 365, sec. 33.

In conclusion, the appellant held a sales permit on September 12, 1969. When his business property was sold on that same date, the sale failed to come within the statutory definition of an occasional sale because he still held the permit. Appellant has similarly failed to overcome the statute's presumption of constitutionality.

*By the Court.*—Judgment affirmed.