THREE LIONS SUPPER CLUB, LTD., Respondent, v.
DEPARTMENT OF REVENUE, Appellant.

*No. 678 (1974). Submitted on briefs April 12, 1976.—Decided
May 4, 1976.*
(Also reported in 241 N. W. 2d 190.)

For the appellant the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *E. Weston Wood*, assistant attorney general.

For the respondent the cause was submitted on the brief of *Cross, Karch, Langer & Wagner* of Baraboo.

ROBERT W. HANSEN, J. The sole issue on this appeal is whether the sale of the furnishings and equipment of the supper club was an "occasional sale" and, therefore, not subject to the state sales tax.

A sale of personal property is subject to the state retail sales tax.[1] However, certain sales are specifically exempted.[2] One such exemption is as to an "occasional sale,"[3] defined to include: "(a) Isolated and sporadic sales of tangible personal property or taxable services where the infrequency, in relation to the other circumstances, including the sales price and the gross profit, support the inference that the seller is not pursuing a vocation, occupation or business or a partial vocation or occupation or part-time business as a vendor of personal property or taxable services."[4]

The first question to be answered is whether, under this general definition, the sale of the restaurant equipment and furnishings comes within the exception. The burden is on the taxpayer to show he comes within the exemption,[5] and tax exemptions are strictly construed against the taxpayer.[6] It is the position of the revenue

---

[1] Sec. 77.52 (1), Stats.

[2] Sec. 77.54, Stats.

[3] Sec. 77.54 (7), Stats.

[4] Sec. 77.51 (10) (a), Stats.

[5] Sec. 77.52 (13), Stats.

[6] *Comet Co. v. Department of Taxation* (1943), 243 Wis. 117, 123, 9 N. W. 2d 620. *See also: Moore Motor Freight Lines v. Dept. of Taxation* (1961), 14 Wis. 2d 377, 386, 111 N. W. 2d 148.

department that the sale of the restaurant equipment was the final act of the retail business that the taxpayer had been carrying on whereby it changed its business from that of a restaurant operator to that of a landlord. The circuit court instead held that the sale of the equipment and furnishings and inventory was a separate and "isolated" incident. The circuit judge found that the taxpayer was not carrying on the operation of the restaurant when it sold out the restaurant equipment. The circuit court opinion commented: "Logically it should make no difference for sales taxation purposes whether the sale of the equipment occurred one day or six months after the ceasing to operate the restaurant and bar business." We agree. It hardly seems appropriate to identify the sale of the equipment on which the cooking was done with the sale of food in the restaurant before it closed. Unless such comparison can be made, there would seem to be no basis for the "final act of conducting the restaurant" argument of the revenue department. Instead, we hold that the sale here involved was "isolated and sporadic" in nature and "occasional" under the statute.

However, the statute exempting "occasional sales" goes on to provide: "No sale of any tangible personal property or taxable service may be deemed an occasional sale if at the time of such sale the seller holds or is required to hold a seller's permit."[7] The taxpayer here was required to have such seller's permit for the operation of its supper club.[8] The taxpayer turned in its permit to the revenue department representative in Baraboo on December 19, 1972. The sale of the supper club took place on December 20, 1972. Was the taxpayer holding or required to hold a seller's permit at the time of the sale of the bar and restaurant equipment on the 20th? The statute requires permits to be held "only

[7] Sec. 77.51 (10) (a), Stats.
[8] Sec. 77.52 (7), Stats.

by persons actively operating as sellers of tangible personal property or taxable services."[9] It provides that: "Any person not so operating shall forthwith surrender his permit to the department for cancellation."[10] The department sees this latter provision as meaning that a permit is in effect after its surrender by its holder and until its cancellation by the department.

The circuit court rejected this heavy reliance upon the act of canceling, stating: ". . . it is unreasonable to assume that the mere time in which the department performed the ministerial act of cancellation should be determinative of the effective date of surrender for this might occur anywhere within a period of a few hours up to several weeks." The circuit judge added: "Surely the legislature did not intend that the department would have the right to hold up the cancellation after delivery for the purpose of making taxable some occasional sale the holder might make in the meantime."

We agree with the result reached and construction given by the circuit court for the reason that the statutory provision involved, which defines "occasional sales," does not use the word "cancellation" at all, but instead uses the word "hold."[11] To "hold" something is to have it in one's possession. The dictionary defines "hold" as meaning: "to retain in one's keeping: maintain possession of: not give up or relinquish."[12] The Uniform Commercial Code, in another context, defines "holder" as "a person who is in possession of a document . . . or an instrument or an investment security. . . ."[13] The word "hold" relates to possession. As used in defining "occa-

[9] Sec. 77.52 (12), Stats.

[10] Id.

[11] Sec. 77.51 (10) (a), Stats.

[12] Webster's, *New International Dictionary* (3d ed., unabridged), page 1078.

[13] Sec. 401.201 (20), Stats.

sional sales," it makes possession rather than cancellation the controlling factor. The surrender of the permit to the department representative in Baraboo determined the end of the "holding" rather than the subsequent act of cancellation by the Madison office.

The revenue department sees support for its assessment in the recent case of *Ramrod, Inc. v. Department of Revenue.*[14] There this court held the sale of business personal property not to be exempt as an "occasional sale." However, in that case the seller held a seller's permit at the time of the sale of the business property. On the compartive weight to be given to "surrender" versus "cancellation," in *Ramrod* this court said that the seller there ". . . had the choice of terminating his business operations and surrendering his sales permit in order to prevent the last sentence of sec. 77.51 (10) (a), Stats., from disqualifying him from this exemption. . . ."[15] While this court in *Ramrod* did not reach the issue of whether such surrender would have made a difference, the question was phrased in term of "surrender" by the taxpayer not "cancellation" by the department.[16] Reaching the issue now, we conclude that the taxpayer having surrendered his permit to a department representative was not "holding" such permit after such surrender.

Additionally, it is held that the taxpayer here was not required to hold a seller's permit at the time of the sale of its business personal property. The statutory requirement of a permit is addressed to persons ". . . desiring to operate as a seller within this state."[17] The word "seller" is statutorily defined to include persons ". . . selling, leasing or renting tangible personal property or

[14] (1974), 64 Wis. 2d 499, 219 N. W. 2d 604.
[15] *Id.* at page 509.
[16] *Id.* at page 509.
[17] Sec. 77.52 (7), Stats.

selling, performing or furnishing services of a kind the gross receipts from the sale, lease, rental, performance or furnishing of which are required to be included in the measure of the sales tax."[18] Such requirement for such permit would here relate to the sale of drinks at the bar or food at the tables in the supper club, not to the sale of personal property twenty-four hours or ninety days after the restaurant closed, to someone who wanted to reopen it for business. So we conclude that this taxpayer at the time of the sale here involved neither held nor was required to hold a seller's permit. Thus the sale involved does qualify as an "occasional sale," as the circuit court held, and such sale was not subject to the state sales tax. We affirm the judgment of the circuit court that reversed the order of the tax appeals commission and directed the commission to remand this case to the revenue department with directions to abate the sales tax assessed against this taxpayer.

*By the Court.*—Judgment affirmed.

[18] Sec. 77.51 (9), Stats.