MIDCONTINENT BROADCASTING COMPANY OF WISCONSIN, INC., Petitioner-Appellant, v. DEPARTMENT OF REVENUE, Respondent.†

Court of Appeals

*No. 78–203. Submitted on briefs February 16, 1979.—*
*Decided August 28, 1979.*
(Also reported in 284 N.W.2d 112.)

† Petition to review granted.

For the petitioner-appellant the cause was submitted on the briefs of *Jeremy C. Shea* and *Ross & Stevens* of Madison.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *John E. Armstrong,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J. This case involves the construction of the statute defining "occasional sales," which are exempt from sales tax in Wisconsin. The statutory definition contained in sec. 77.51 (10) (a), was created by sec. 48, ch. 620, Laws of 1961, to read:

A sale of property not held or used by a seller in the course of an activity for which he is required to hold a seller's permit, provided such sale is not one of a series of sales sufficient in number, scope and character to constitute an activity requiring the holding of a seller's permit.

This section was repealed and recreated by sec. 228, ch. 154, Laws of 1969, the budget bill, to define occasional sales as follows:

Isolated and sporadic sales of tangible personal property or taxable services where the infrequency, in relation to the other circumstances, including the sales price and the gross profit, support the inference that the seller is

not pursuing a vocation, occupation or business or partial vocation or occupation or part-time business as a vendor of personal property or taxable services. *No sale of any tangible personal property or taxable service may be deemed an occasional sale if at the time of such sale the seller holds or is required to hold a seller's permit.* (Emphasis supplied.)

The Wisconsin Department of Revenue (department) seeks to impose a sales tax on the sale proceeds of all the tangible business assets of a television broadcasting station, normally exempt from such tax, for the sole reason that it possessed a seller's permit at the time of sale. It held the permit for the sale of phonograph records, from which it had derived a small portion of its revenues on a sporadic basis during nearly four years prior to the sales of its operating assets. These assets were sold for $776,524.63.[1] The sales tax sought to be imposed is $31,060.99. The gross receipts from the taxpayer's sale of records during the entire four-year period was $26,-716.09, upon which a sales tax of $842.54 was due and paid. The taxpayer's gross receipts from the sale of broadcasting time during the same period, for which no seller's permit was then or is now required in Wisconsin, was $7,834,314. Thus, the department seeks to impose a sales tax which is more than $4,300 in excess of the total gross receipts from the record sales, which receipts equalled only three-tenths of one percent (.003) of the exempt revenues generated by the taxpayer's primary business.

The taxpayer contends on this appeal:

1. That the sale of its broadcasting assets is an exempt occasional sale within the meaning of the statute since the record sales for which it held a seller's permit were not made as a part of its main business.

2. That if the statute is not read as exempting such sale from taxation, its imposition of a sales tax on assets

---

[1] The taxpayer paid Wisconsin income taxes on a net capital gain of $1,900,441.00 resulting from the sale.

used in connection with the sale of television broadcast time is an unconstitutional burden on interstate commerce in violation of the United States Constitution.

3. That if the statute is not read as exempting such sale from taxation it constitutes an arbitrary and unreasonable imposition of tax on the taxpayer in violation of its rights under the equal protection and due process clauses of the United States and Wisconsin Constitutions.

The parties have entered into a written stipulation of all facts material to this appeal. Midcontinent Broadcasting Company of Wisconsin, Inc. (taxpayer) is a Wisconsin corporation which operated television station WKOW-TV in Madison from 1960 until October 28, 1970, and operated television station WAOW-TV in Wausau from 1965 until October 28, 1970. From 1960 to date, the taxpayer has also operated radio station WTSO, formerly WKOW, in Madison. Both TV stations were affiliates of the American Broadcasting Company; the radio station was not affiliated with any national network.

The vast majority of the taxpayer's operating revenues were derived from charges for broadcast time paid for by advertisers sponsoring network, national and local programming, none of which revenues were subject to sales tax or required the holding of a seller's permit under the applicable statutes. The combined gross operating revenues from the TV and radio stations during the years 1967 through 1970, are as follows:

| Calendar Year | WKOW-TV and WAOW-TV | + | WTSO Radio | = | Total |
|---|---|---|---|---|---|
| 1967 | $1,370,200 | | $ 535,890 | | $1,906,090 |
| 1968 | 1,414,039 | | 544,023 | | 1,958,062 |
| 1969 | 1,503,893 | | 584,964 | | 2,008,857 |
| 1970 | 1,277,310 | | 603,995 | | 1,881,305 |
| (to 10/28/70) | | | | | |
| Total | $5,565,442 | | $2,268,872 | | $7,834,314 |

During the three-month period ending February 28, 1967, the taxpayer began selling phonograph records to viewers of its television stations on behalf of certain of its sponsors, as special sales items. Making such phonograph records available was contemplated as a service to viewers of the stations in conjunction with certain television programming. In some cases the record buyers sent their payments directly to the sponsors, and in some cases payments were sent to the television stations. In the latter cases, the taxpayer paid the sales tax to the department on all sales where payment was sent to and received by it. The parties have stipulated that the record sales "were not made as a part of petitioners' main business, which was broadcasting."

Being "under the impression" that the Wisconsin Statutes required it to hold a seller's permit in connection with the sale of the records, the taxpayer applied for such a permit on or about February 28, 1967. It indicated on the application that the "Kind of Taxable Merchandise" on which it intended to pay sales tax was "Record Sales." The permit was issued on March 9, 1967. Thereafter, it filed sales tax returns each quarter until the TV stations were sold, showing gross taxable receipts and net sales tax owing as follows:

| Quarter Ending | Gross Taxable Receipts | Net Sales Tax |
|---|---|---|
| February 28, 1967 | $ 8,069.50 | $237.25 |
| May 31, 1967 | 1,465.67 | 43.09 |
| August 31, 1967 | –0– | –0– |
| November 30, 1967 | 639.32 | 18.80 |
| February 29, 1968 | 8,672.33 | 254.97 |
| May 31, 1968 | 1,159.22 | 34.08 |
| August 31, 1968 | 602.91 | 17.73 |
| November 30, 1968 | –0– | –0– |
| February 28, 1969 | 283.98 | 8.35 |
| May 31, 1969 | –0– | –0– |

| Quarter Ending | Gross Taxable Receipts | Net Sales Tax |
|---|---|---|
| August 31, 1969 | –0– | –0– |
| November 30, 1969 | 1,199.62 | 47.02 |
| February 28, 1970 | 1,890.54 | 74.11 |
| May 31, 1970 | 625.00 | 24.50 |
| August 31, 1970 | 477.00 | 18.70 |
| November 30, 1970 | 1,631.00 | 63.94 |
| TOTAL | $26,716.09 | $842.54 |

On September 30, 1969, the taxpayer entered into a formal sales agreement with Horizons Communications Corporation of Wisconsin, a Delaware corporation, pursuant to which taxpayer agreed to sell to that corporation the tangible and intangible assets used in the operations of its television stations, subject to approval by the Federal Communications Commission of the transfer of the broadcasting licenses to Horizons. At that time, the taxpayer had no actual knowledge that the legislature had amended the statute defining "occasional sale," effective September 1, 1969, in the manner indicated at the outset of this opinion. Consequently, the taxpayer made no effort to negotiate the collection of any sales tax from the purchaser, as authorized by sec. 77.52(3).

The transaction was closed on October 28, 1970. The parties have stipulated that the value of the tangible assets located in Wisconsin which were conveyed pursuant to the transaction was $776,524.63. Following the transaction, the taxpayer continued to operate radio station WTSO, which was at no time engaged in the sale of records or of any activity requiring a seller's permit.[2] The

---

[2] The stipulation recites that the radio station began to do some "production work" for outside customers in the quarterly period ending May 31, 1972, that it "believed" such activity to be subject to sales taxes, and that it filed quarterly reports and paid sales taxes thereon. These facts are not material to this appeal.

taxpayer continued to hold the seller's permit issued on March 9, 1967, despite this fact. The department issued its notice assessing the sales tax complained of in this action on November 18, 1971. The Tax Appeals Commission denied the taxpayer's petition for a redetermination and affirmed the assessment.

The taxpayer commenced this action for review pursuant to ch. 227, Stats. The circuit court affirmed the action of the department, rejecting all three contentions asserted by the taxpayer. In its memorandum decision, the trial court said:

Under the holding of the Wisconsin Supreme Court in *Three Lions Supper Club, Ltd.*, 72 Wis.2d 546, 241 N.W. 2d 190 (1976), there is no question but that the instant sale of tangible personal property would have been an exempt "occasional sale" within the meaning of sec. 77.54 (7), Stats., if petitioner had not held a seller's permit.

A literal reading of sec. 77.54(7) leads to the inescapable conclusion that because of the express provision of the last sentence of sec. 77.51(10(a) the instant sale was not exempt from tax because petitioner at that time both legally and physically held a seller's permit.

It held that the holding of *Ramrod, Inc. v. Department of Revenue*, 64 Wis.2d 499, 219 N.W.2d 604 (1974) was controlling, and concluded: "For the holder of a seller's permit, such as petitioner here, there is no such thing as an exempt 'occasional sale.'" The taxpayer appeals from the judgment affirming the department's order.

Sales tax is a tax imposed upon the privilege of selling. *Ramrod, Inc. v. Department of Revenue*, 64 Wis.2d 499, 219 N.W.2d 604 (1974). Section 77.52(1), Stats., provides for the imposition of the tax on the sale of tangible personal property. Section 77.52(2) provides for such a tax on the sale, performance or furnishing of certain types of services enumerated in the statutes. Though the

statute by its terms imposes the tax upon the "retailers"[3] of tangible goods and the "persons selling, performing, or furnishing" the enumerated services, that statute clearly contemplates that the tax will be paid ultimately by the consumer or user of the goods and services. Section 77.52(3) provides:

The taxes imposed by this section may be collected from the consumer or user.

Section 77.52(4) provides:

It is unlawful for any retailer to advertise or hold out or state to the public or to any customer, directly or indirectly, that the tax or any part thereof will be assumed or absorbed by the retailer or that it will not be added to the selling price of the property sold or that if added it, or any part thereof, will be refunded. Any person who violates this subsection is guilty of a misdemeanor.

Hence, under the statutory scheme, the retailer or seller is in practical effect an agent of the state for the collection of a tax imposed upon the consumer of tangible goods and the user of certain services.

Section 77.52(7) requires "every person desiring to operate as a seller" to apply for a seller's permit. Under sec. 77.52(12), any person or any officer of a corporation operating as a "seller" in Wisconsin without a seller's permit is deemed guilty of a misdemeanor. That section also provides:

Permits shall be held *only* by persons *actively operating as sellers* of tangible personal property or taxable services. Any person not so operating shall forthwith surrender that person's permit to the department for cancellation. The department may revoke the permit of a person found not to be actively operating as a seller of tangible personal property or taxable services. (Emphasis supplied.)

---

[3] Sec. 77.51(7) defines "retailer," in relevant part, as:

(a) Every seller who makes any sale of tangible personal property or taxable service.

The word "seller" is defined in sec. 77.51(9) as including:

[e]very person selling, leasing or renting tangible personal property or selling, performing or furnishing services *of a kind* the gross receipts from the sale, lease, rental, performance or furnishing of which are required to be included in the measure of the sales tax. (Emphasis supplied.)

Though the parties have stipulated that the sale of broadcasting time, which was the business of the taxpayer, was and is not subject to a sales tax and did not require the taxpayer to hold a seller's permit, the stipulation is silent as to whether the taxpayer was required under the above statutes to hold a seller's permit for the sale of phonograph records on behalf of its sponsors. The stipulation does not indicate whether the payments received for the records by the taxpayer were remitted in full to the sponsors in question (except for the sales tax portions of those payments which were remitted to the department). It does not state the basis upon which the taxpayer formed the "impression" that it was required to hold the permit, though it seems reasonable to assume that the criminal sanctions imposed by sec. 77.52(12) encouraged it to resolve all doubts in favor of that impression.

It is apparently the position of the department that the question of whether this taxpayer was legally required to hold the permit is immaterial under the last sentence of sec. 77.51(10)(a), Stats.:

No sale of any tangible personal property or taxable service may be deemed an occasional sale if at the time of such sale the seller holds or is required to hold a seller's permit.

Under this broad literal reading of the sentence, a seller's permit held in fact by any taxpayer—for any reason, and regardless whether the taxpayer is a "retailer" or "seller" within the meaning of the sales tax statutes—precludes

the taxpayer from the occasional sales exemption afforded to all other taxpayers. To so construe the statute would be to impose a tax for inadvertence or excessive caution, and not for the "privilege of selling . . . at retail" contemplated by sec. 77.52. Under such a construction an individual making a one-time sale of a dog or a law library, or conducting a garage sale, would be subject to sales tax if he or she held a seller's permit acquired, *e.g.*, for the purpose of selling pots and pans, or of running a professional photography studio whose services are taxable under sec. 77.52(2)(a)7. Such a construction ignores the clearly expressed legislative intent to impose the sales tax on sales of goods and services "at retail," 77.52(1) and (2), Stats., and to exclude from taxation those "isolated and sporadic sales . . . where the infrequency, in relation to other circumstances, *including the sales price and the gross profit,* support the inference that the seller is not pursuing a vocation, occupation or business . . . as a *vendor* of personal property or taxable services." Sec. 77.51(10)(a). (Emphasis supplied.)

We cannot agree with the trial court that the holding of *Ramrod, Inc. v. Department of Revenue,* 64 Wis.2d 499, 219 N.W.2d 604 (1974) compels this harsh and unreasonable result. That case also involved the sale of the taxpayer's business assets at a time when the taxpayer held a seller's permit. However, the taxpayer in that case operated a dry cleaning business and was required to have a permit for the sale of "laundry, dry cleaning, pressing and dyeing services" pursuant to the express provisions of sec. 77.52(2)(a)6, which imposes a sales tax on the sale of such services. As to such a taxpayer, the supreme court held that the terms of the statute were clear and unambiguous, *Ramrod, supra* at 505, and that the holding of the permit at the time of the sale of the underlying stock in trade disentitled the taxpayer to the "occasional sales" exemption. It held that the legisla-

tive distinction drawn between taxpayers holding a permit and those who do not was justified by considerations of administrative convenience, *Ramrod, supra* at 510, and did not constitute arbitrary or unreasonable classification in violation of the taxpayer's right to equal protection and due process. The taxpayer in that case, the court said, "stands in the same position as any businessman who operates under the requirements of a sales permit." *Ramrod, supra* at 511–512.[4]

■

The essential difference between *Ramrod* and this case is that the taxpayer here did *not* operate its business under the requirements of a sales permit. The permit was held for purposes only remotely connected with the operation of its broadcasting business, and it is not at all clear that the taxpayer was required to hold the permit for those purposes. Though the trial court accurately noted that sellers' permits are general in nature, and that a permit acquired for one purpose may be used for other purposes, it is undisputetd that this taxpayer engaged in no arguably taxable activity other than that for which it assumed a permit was necessary. "Administrative convenience" is a slender reed upon which to justify the imposition of sales tax on the sale of the stock in trade of a business not subject to the sales tax provisions in the first place. In our judgment it is too slender a reed to support the weight of the inequity to this taxpayer which a literal reading of a single sentence of those provisions would seem to exact.

---

[4] That case was followed by *Three Lions Supper Club v. Dept. of Revenue*, 75 Wis.2d 546, 241 N.W.2d 190 (1976), which held that a restaurant owner, whose sales of food were subject to sales tax, could avoid the imposition of the tax on the sale of the restaurant's assets by surrendering its seller's permit prior to such sale.

As the supreme court observed in *Janesville Data Center v. Dept. of Revenue,* 84 Wis.2d 341, 344, 267 N.W.2d 656, 657 (1978) :

The tax laws are written to encompass a great variety of businesses and transactions. The statutory language must be given content case by case and business by business by the agencies administering the tax laws and the courts interpreting the tax laws. We must look at the statutory language as well as at the design and purposes of the statute.

While the courts are not to "search for doubt in an endeavor to defeat an obvious legislative intention," *Telemark Co. v. Department of Taxation,* 28 Wis.2d 637, 640, 137 N.W.2d 407 (1965), the Wisconsin Supreme Court has declared that a "cardinal rule" in interpreting statutes is: "the purpose of the whole act is to be sought and is favored over a construction which will defeat the manifest object of the act." *Student Asso. of U. of Wis.-Milw. v. Baum,* 74 Wis.2d 283, 294–95, 246 N.W.2d 622 (1976), cited with approval in *Milwaukee County v. ILHR Dept.,* 80 Wis.2d 445, 453, 259 N.W.2d 118 (1977). *See also Sands, 2A Sutherland on Statutes and Statutory Construction,* sec. 45.09 (4th ed. 1973). It is true that tax exemptions are to be construed strictly against the taxpayer. *Three Lions Supper Club v. Dept. of Revenue,* 72 Wis.2d 546, 548, 241 N.W.2d 190 (1976). It is well-established, however, that the law favors rational and sensible construction, and that a construction which would produce an unreasonable and absurd result is to be rejected in favor of one producing a reasonable result. *Falkner v. Northern States Power Co.,* 75 Wis.2d 116, 124, 248 N.W.2d 885 (1977), *Volunteers of America v. Industrial Comm.,* 30 Wis.2d 607, 616–17, 141 N.W.2d 890 (1966). Statutes are also to be construed so as to avoid an unconstitutional interpretation. *State ex rel.*

*Strykowski v. Wilkie,* 81 Wis.2d 491, 526, 261 N.W.2d 434 (1978), *State ex rel. Harvey v. Morgan,* 30 Wis.2d 1, 13, 139 N.W.2d 585 (1966). Finally, each part of the statute must be construed in connection with the other provisions of the act so as to produce a harmonious whole, and to avoid attributing to the legislature a contradictory intent. *City of Milwaukee v. Milwaukee County,* 27 Wis. 2d 53, 56, 133 N.W.2d 393 (1965).

It is the manifest object of sec. 77.52, Stats. to impose a sales tax *only* upon the retail sales of tangible goods and on the retail sales of specifically enumerated services. As a part of that object, the legislature has chosen to exclude from such taxation the sales of intangibles and nonenumerated services such as the sale of broadcast time. The business assets sold by this taxpayer, in contract to the drycleaning and restaurant assets involved in *Ramrod, Inc. v. Department of Revenue,* 64 Wis.2d 499, 219 N.W.2d 604 (1974) and *Three Lions Supper Club v. Dept. of Revenue,* 72 Wis.2d 546, 241 N.W.2d 190 (1976), were never used by the taxpayer in the course of an activity for which the taxpayer was required to hold a seller's permit under Wisconsin law. We conclude that it would be contrary to the legislative purpose to impose a sales tax on the sale of such assets solely because the taxpayer held a seller's permit (which it may not have been required to hold) in connection with another activity, only remotely connected to its business. *See, Glass-Tite Industries, Inc. v. State Board of Equal.,* 266 Cal. App.2d 691, 72 Cal. Rptr. 244 (1968).

We therefore hold that where a taxpayer in a business whose primary sales are exempt from the sales tax requirements sells the assets of that business at a time when it holds a seller's permit for reasons having no connection or (as here) only a remote connection to the

business whose assets are being sold, the taxpayer is not a "seller" who "holds" a permit within the meaning of sec. 77.51(10)(a) defining "occasional sale." This holding leaves the burden of proving that such a sale is not taxable "on the person who makes the sale," exactly where the legislature put it in sec. 77.52(13).[5] It deprives the department of the convenience of an arbitrary but certain rule only with respect to those taxpayers in businesses normally exempt from sales tax, and requires it in such cases to make the case by case determination contemplated by the legislature in the first sentence of the "occasional sales" statute after considering whether the total circumstances, "including the sales price and the gross profit, support the inference that the seller is not pursuing a . . . business . . . as a vendor of personal property or taxable services." Sec. 77.51(10)(a). It leaves taxpayers whose business sales are normally subject to the sales tax requirement subject to the "across-the-board" presumption set forth in the last sentence of the section, unless they surrender the seller's permit prior to a sale of the assets used to generate the income subject to sales tax prior to the sale of those assets. *Three Lions Supper Club v. Dept. of Revenue,* 72 Wis.2d 546, 241 N.W.2d 190 (1976).

The department cites the legislature's failure during the 1971 session to adopt S.B. 143, which would have amended the last sentence of sec. 77.51(10)(a) so as to preclude the imposition of sales tax on the sale of all

---

[5] Sec. 77.52(13) reads as follows:

For the purpose of the proper administration of this section and to prevent evasion of the sales tax it shall be presumed that all receipts are subject to the tax until the contrary is established. The burden of proving that a sale of tangible personal property or services is not a taxable sale at retail is upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property or service is purchased for resale or is otherwise exempt.

business assets of a taxpayer holding a seller's permit,[6] as evidence that it intended to tax such sales. This bill was noted, without comment, is *Ramrod, Inc. v. Department of Revenue,* 64 Wis.2d 499, 219 N.W.2d 604 (1974). The legislative reference bureau records indicate that the bill died in committee, without being considered by either house of the legislature. Its demise can hardly be viewed as an expression of legislative intent either way, particularly since neither *Ramrod, supra,* nor *Three Lions, supra,* had yet been decided. Since both those cases, which are the only Wisconsin cases to construe the occasional sale statute, dealt with the sales of businesses engaged in activities subject to sales tax, the bill's demise in no way evinces a legislative intent to assess a sales tax against the proceeds of sale of businesses whose activities are not subject to sales tax.

*By the Court.*—Judgment reversed and cause remanded to the circuit court for proceedings consistent with this opinion.

---

[6] The bill would have changed the last sentence of sec. 77.51 (10) (a) to read as follows:

[N]o sale of any tangible personal property or taxable service may be deemed an occasional sale if at the time of such sale the seller holds or is required to hold a seller's permit, *except where such sale of tangible personal property is not in the normal course of the activity for which the seller's permit was originally required and is of such infrequency or magnitude that it could not be construed to be the seller's vocation, occupation or business, either full or part-time, and where such sale terminates or significantly changes the activity for which the original seller's permit was issued.* (Emphasis supplied.)