CITY OF LITTLETON, Town of Avon, City of Cortez, City of Cherry Hills Village, Eagle Vail Fire Protection District and City of Grand Junction, Plaintiffs–Appellees,

v.

FIRE AND POLICE PENSION ASSOCIATION, Defendant–Appellant.

No. 88CA0026.

Colorado Court of Appeals,
Div. III.

July 27, 1989.

Rehearing Denied Sept. 14, 1989.

Certiorari Denied Jan. 29, 1990.

S. Morris Lubow, Denver, for plaintiffs-appellees.

C. Thomas Bastien, Denver, and William Morris, Englewood, for defendant-appellant.

Opinion by Judge CRISWELL.

The Fire and Police Pension Association (the association), a governmental agency, appeals from a declaratory decree of the district court. That decree determined that, when a local government withdraws from the state fire and police pension plan, the association must refund to that local government from funds under its control all contributions previously made by it on behalf of all employees who had ceased their employment before the local government withdrew. The trial court's judgment required the association to pay over to the plaintiffs, who consist of several municipalities and fire districts which withdrew from the association after January 2, 1985, contributions made by them on behalf of their former employees. We agree with the trial court that the governing statute is unambiguous; thus, we affirm its judgment.

In 1979, the Colorado General Assembly, faced with the fact that the then-existing pension plans for local fire and police department employees were not actuarially sound, adopted an act, § 31–30–1001, et seq., C.R.S. (1986 Repl.Vol. 12B), which established a statewide pension system for all local fire and police employees hired after April 8, 1978. *See Colorado Springs v. State*, 626 P.2d 1122 (Colo.1980). The association was created to administer the provisions of this statute. Section 31–30–1004, C.R.S. (1986 Repl.Vol. 12B).

The statute provides for retirement, disability, death and survivor benefits, §§ 31–30–1006, 31–30–1007, and 31–30–1008, C.R.S. (1986 Repl.Vol. 12B), which are funded by contributions made to the association by the local governmental employers and the covered employees, as well as by certain funds made available for this purpose from the state. *See* §§ 31–30–1012, 31–30–1013, and 31–30–1014, C.R.S. (1986 Repl.Vol. 12B).

Every "employer," defined as "any municipality or special district offering fire protection service ...," § 31–30–1002(4), C.R.S. (1986 Repl.Vol. 12B) is required to provide to its "members" the benefits provided by this statute. Section 31–30–1003(1), C.R.S. (1986 Repl.Vol. 12B). For this purpose, a "member" is "an active employee who is a full-time salaried employee of [the] municipality or fire protection district" and who was hired after April 8, 1978. Section 31–30–1002(5), C.R.S. (1986 Repl.Vol. 12B).

From the date of its initial adoption, this statute has contained provisions authorizing an employer to "withdraw" from the association and to provide retirement benefits to members covered by the act through a local pension plan. *See* § 31–30–1003(2)(b), C.R.S. (1986 Repl.Vol. 12B). However, such withdrawals must have become effective by January 1, 1988. Section 31–30–1003(2)(b)(I), C.R.S. (1986 Repl.Vol. 12B).

Initially, the statute did not describe what was to happen to the employer and member contributions to the association when a previously covered employer elected to withdraw. In 1981, however, the General Assembly added § 31–30–1003(2)(b)(V), C.R.S. (1986 Repl. Vol. 12B). *See* Colo.Sess.Laws 1981, ch. 378 at 1525. That subsection reads, in pertinent part, as follows:

"(A) Within six months from the effective date of withdrawal, the association shall refund to the employer *all employer and member contributions* in its custody...."

(B) The refunded moneys shall be used only as contributions to the alternative pension plan.

(C) Upon the effective date of withdrawal, the employer is liable for the payment of all benefits then vested under the provisions of section 31–30–1006 [relating to retirement benefits based upon years of service]." (emphasis supplied)

From the effective date of this amendment until January 2, 1985, a period of some three and one-half years, whenever an employer withdrew from the association, the association refunded to such employer *all* of the contributions which it had previously made to the association, whether those contributions were made on behalf of employees who were still employed by the employer on the date of its withdrawal or were made on behalf of individuals who were no longer employed by it. Effective January 2, 1985, however, the association adopted its Rule 401.22, which established its formal policy upon the nature of the refunds required by § 31–30–1003(2)(b)(V). That rule stated that a withdrawing employer would be refunded:

"Employer and member contributions remitted to [the association] on behalf of all [employees] *who are employed by the employer on the effective date of the withdrawal.*" (emphasis supplied)

When plaintiffs withdrew from the association, each to administer its own local pension plan, the association applied this rule to them. Thus, while each employer was refunded the contributions made by the employees who were then employed by it, as well as the contributions made by it on behalf of such employees, no refund was made either of the contributions made by its former employees or of those made by the employer on behalf of those former employees.

The parties agree that the association properly retained the contributions made by the former employees themselves. The refund statute compels the refund of *"member"* contributions, and the definition of this term excludes any former employees, except in certain circumstances not involved here. Section 31–30–1002(5), C.R.S. (1986 Repl.Vol. 12B). Further, the former employee is himself entitled to a refund of the contributions made by him when his employment terminates, § 31–30–1011(1)(a), C.R.S. (1986 Repl.Vol. 12B), or, in certain instances, to vested retirement benefits from the association. Section 31–30–1011(2)(a), C.R.S. (1988 Cum. Supp.).

Plaintiffs argue, however, that the refund statute's reference to *"all* employer ... contributions" is clear and unambiguous and that the association's rule limiting the type of employer contributions that will be refunded is inconsistent with this statutory provision. The trial court agreed, and so do we.

The association makes two principal arguments in support of its assertion that the term "all employer ... contributions" should be construed to mean something less than all employer contributions.

It relies, first, upon the well-accepted principle that a statutory provision must be not construed in isolation, but must be considered within the context of the entire act of which it is a part. *See Gonzales v. District Court,* 629 P.2d 1074 (Colo.1981); *Peoples Bank v. Banking Board,* 164 Colo. 564, 436 P.2d 681 (1968).

It then notes that, by virtue of § 31–30–1006(6), C.R.S. (1986 Repl.Vol. 12B), an employee who terminates his employment with one employer and subsequently becomes employed by another employer covered by the act may receive credit toward a pension benefit for his prior service with the first employer. Likewise, a terminated employee who is re-employed by his original employer may be re-credited with his prior service if he repays any previous contributions that he may have withdrawn. Section 31–30–1011(1), C.R.S. (1986 Repl.Vol. 12B).

Finally, it points to information supplied by its actuarial consultant that any defined benefit retirement plan, such as the association's plan, must depend upon "forfeitures," *i.e.,* contributions made on behalf of employees whose employment terminates before they become eligible for a vested benefit, in order to remain actuarially sound. It concludes, therefore, that the

General Assembly could not have intended to deprive the association of the benefit of the forfeitures represented by contributions made by withdrawing employers for employees who are no longer employed by that employer, but who might be covered by the statewide plan at some future date.

However, if the words of a statute are plain, this court must apply it as it is written. *Heagney v. Schneider*, 677 P.2d 446 (Colo.App.1984). And, whether the refund provisions of § 31–30–1003(2)(b)(V) are considered alone or in conjunction with the other provisions of the act, we conclude that those provisions plainly require a refund of "all" employer contributions.

When the General Assembly adopted the refund statute, the policy question was presented whether it should be the members employed by the withdrawing employer, and henceforth to be covered by a local plan, or the members employed by the other employers, who would continue in the association, who should receive the benefit of previous contributions made by that withdrawing employer. The General Assembly's use of the phrase, "all employer ... contributions," considered by itself, is a plain indication of the manner in which it resolved that policy question.

Further, the other provisions of the 1981 refunding amendment, quoted above, require that all refunds be used only as "contributions to the alternative pension plan" and that the withdrawing employer assume responsibility for the payment of certain benefits previously vested under the association plan. These provisions also support the conclusion that it was the legislative intent to allow the present employees of the withdrawing employer, and not the employees of other governments, to receive the benefit of their employer's previous contributions.

The second argument advanced by the association to justify the validity of its rule rests upon the undoubted proposition that deference should be given by the courts to the interpretation placed upon a statute by the officer or agency charged with its administration. *Lucero v. Climax Molybdenum Co.*, 732 P.2d 642 (Colo.1987).

In addition, it notes that in 1985 a bill was introduced in the Colorado Senate that would have amended the statute in such a manner as to invalidate the association's rule. This bill was referred to the Senate Committee on Local Affairs where, on February 13, 1985, three members of that committee voted in favor of the bill, three voted against it, and three members were absent; the bill was thus not reported out of this committee. It argues that this action constitutes a legislative approval of, or at least a refusal by the General Assembly to disapprove, the association's rule.

However, we cannot ascribe any legislative intent with respect to the association's rule, either to the Senate as a whole or to the Colorado House of Representatives, as a result of the vote in this Senate committee; the death of a bill at such a stage is no indication of the intent of the legislature as a whole. *See Midcontinent Broadcasting Co. v. Wisconsin Department of Revenue*, 91 Wis.2d 579, 284 N.W.2d 112 (App.1979), *rev'd*, 98 Wis.2d 379, 297 N.W.2d 191 (1980) (principle not disapproved).

In addition, the deference that might otherwise be accorded the association's rule is weakened here because the association's actions for a period of more than three years were inconsistent with its later formal interpretation of the statute; the rule adopted by it was not prompted by any change in the underlying legislation; and, as a consequence of the association's former actions and its later adoption of the rule, the several withdrawing entities were subjected to disparate treatment. *See Bowman v. Eldher*, 149 Colo. 551, 369 P.2d 977 (1962).

In any event, an agency's interpretation is entitled only to deference, not to obeisance. *Colorado Division of Employment & Training v. Parkview Episcopal Hospital*, 725 P.2d 787 (Colo.1986).

We conclude, therefore, that the association's rule is inconsistent with the statute. The statute requires the association to refund to withdrawing local governments all contributions previously made by them on

behalf of both present and former employees.

Judgment affirmed.

NEY and RULAND, JJ., concur.