J. C. PENNEY COMPANY, Appellant, vs. TAX COMMISSION, Respondent: THE STATE and another, Substituted Respondents.

F. W. WOOLWORTH COMPANY, Appellant, vs. SAME, Respondents.

MINNESOTA MINING & MANUFACTURING COMPANY, Appellant, vs. SAME, Respondents.

*April 18—May 20, 1941.*

For the appellant J. C. Penney Company there were briefs by *Ela, Christianson & Ela* of Madison, and *Gwinn & Pell* of New York, N. Y., attorneys, and *G. Burgess Ela* of Madison, *W. H. Dannat Pell* and *Roswell Dean Pine, Jr.*, both of New York, N. Y., of counsel; for the appellant F. W. Woolworth Company there were briefs by *Davies, Auerbach, Cornell & Hardy* of New York, N. Y., and *Ela, Christianson & Ela* of Madison; and for the appellant Minnesota Mining & Manufacturing Company there were briefs by *John L. Connolly* of St. Paul, Minnesota, *Frederick J. Miller* of Little Falls, Minnesota, and *Ela, Christianson & Ela* of Madison, and oral argument by *Mr. Pell, Mr. Pine, Mr. G. Burgess Ela,* and *Mr. Connolly.*

For the respondents there was a brief by the *Attorney General, James Ward Rector,* deputy attorney general, and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Rector* and *Mr. Persons.*

ROSENBERRY, C. J.  · On remand from the supreme court of the United States.   This case was originally reported in 233 Wis. 286, 289 N. W. 677, 126 A. L. R. 1333.   In reversing the case the supreme court of the United States said :

" 'For the privilege of declaring and receiving dividends, out of income derived from property located and business transacted in' Wisconsin, an exaction 'equal to two and one half per centum of the amount of such dividends declared and paid by all corporations (foreign and local)' is the additional tax now before us.   In the enforcement of this measure against foreign corporations, the amount of income attributable to Wisconsin is calculated according to the same formula as that employed in assessing the general corporate income tax paid by such foreign corporations.   *The practical operation of this legislation is to impose an additional tax on corporate earnings within Wisconsin but to postpone the liability for this tax until such earnings are paid out in dividends.*   In a word, by its general income tax Wisconsin taxes corporate income that is taken in; *by the privilege dividend tax of 1935 Wisconsin superimposed upon this income tax a tax on corporate income that is paid out."   Wisconsin v. J. C. Penney Co.* 311 U. S. 435, 441, 61 Sup. Ct. 246, 85 L. Ed. 267.

Upon the record being remanded to this court the plaintiff taxpayers seek to have the case reconsidered and the act declared invalid under state law on the ground that the supreme court of the United States held the tax to be an income tax and that as such it cannot be sustained under the constitution and laws of the state of Wisconsin.   The supreme court of the United States further said (p. 443) :

"The case thus reduces itself to the inquiry whether Wisconsin has transgressed its taxing power because its supreme

court has described the practical result of the exertion of that power by one legal formula rather than another—has labeled it a tax on the privilege of declaring dividends rather than a supplementary income tax.

"A tax is an exaction. Ascertainment of the scope of the exaction—what is included in it—is for the state court. But the descriptive pigeonhole into which a state court puts a tax is of no moment in determining the constitutional significance of the exaction."

Inasmuch as the legislature expressly declared the tax to be for the "privilege of declaring and receiving dividends," we denominated it an excise or privilege tax. *State ex rel. Froedtert G. & M. Co. v. Tax Comm.* (1936) 221 Wis. 225, 233, 265 N. W. 672, 267 N. W. 52. We said:

"However the legislature may have regarded the tax, we have no difficulty in construing the statute as imposing an excise or privilege tax upon the transaction involved of transferring the dividends from the corporation to its stockholders."

As we understand the law our construction of the state statute is conclusive upon the supreme court of the United States. *Erie R. Co. v. Tompkins* (1938), 304 U. S. 64, 58 Sup. Ct. 817, 82 L. Ed. 1188; *Swift v. Tyson* (1842), 16 Pet. 1, 10 L. Ed. 865. See note 83 L. Ed. 519. If there has been a shifting of labels in this case, it was not done by this court. It is perfectly true that the tax cannot be sustained as an income tax under the law of this state. Under our constitutional amendment authorizing the levying of an income tax, sec. 1, art. VIII, Const., it has been consistently held that an income tax is a burden laid upon the recipient of an income and the amount of the tax is measured by the amount of the income. *State ex rel. Sallie F. Moon Co. v. Wis. Tax Comm.* (1917) 166 Wis. 287, 163 N. W. 639, 165 N. W. 470. Under its laws this state cannot and it does not undertake to tax the income of citizens of other states who are

not doing business in this state. Under the terms of the statute under consideration no tax is levied until a dividend is declared. When the dividend is declared the dividend belongs to the stockholder. It is a debt of the corporation for the recovery of which the stockholder may maintain an action. Inasmuch as the tax cannot be levied until the dividend is declared if it is not a tax on the privilege of declaring and receiving a dividend as we hold it to be, then it must be a tax on the recipient, a person not engaged in doing business in this state nor a resident thereof. In no sense and to no extent whatever, is it a tax upon the income of the corporation.

Ch. 71, sec. 71.01, Wis. Stats., levies a tax on net income to be paid—

"by every person residing within the state or by his personal representative in case of death; and by every nonresident of the state, upon such income as is derived from property located or business transacted within the state."

Secs. 71.03, 71.04, 71.045, 71.047, 71.05, Stats., provide what shall be deducted from the gross income in order to establish net taxable income. There is no provision in the Wisconsin statutes for taxing disbursements as income. The income of the corporation was taxed by the state when it was received. If the state sought to tax the corporate income at higher rate, all that it was required to do was to increase the rate.

In this situation we do not understand that the supreme court of the United States held the tax in question to be an income tax and sustained it as such. The supreme court of the United States said (p. 444) :

"These tags are not instruments of adjudication but statements of result in applying the sole constitutional test for a case like the present one. That test is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the

state. The simple but controlling question is whether the state has given anything for which it can ask return. *The substantial privilege of carrying on business in Wisconsin, which has here been given, clearly supports the tax, and the state has not given the less merely because it has conditioned the demand of the exaction upon happenings outside its own borders.* The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction."

We understand the court upon the whole case to hold that the state of Wisconsin has jurisdiction to levy the tax in question upon the "privilege of declaring and receiving dividends" out of income earned within the state of Wisconsin even though the dividend is declared under the law of the state of Delaware or New York and the transaction of declaring the dividend took place within the state of New York where the disbursement was made.

The only question presented by the record on appeal to the supreme court of the United States was whether the state had jurisdiction to levy the tax. The supreme court of the United States was not asked to construe the statute. That is a matter under the decisions of the supreme court of the United States which is clearly a function of this court, and we must assume that the supreme court of the United States made its decision in recognition of that fact. While we do not concur in the view of the supreme court of the United States as to jurisdiction, we are bound by its decision and we yield to it upon the ground stated and upon no other.

### COMPUTATION OF TAX.

In computing the tax, the Tax Commission proceeded as follows:

Taking the year 1936 as an example, the J. C. Penney Company had an income in 1935 of $15,223,478 derived from business transacted in all forty-eight states. Applying the Wisconsin formula to this figure the commission found that

$587,001 was allocable to Wisconsin. The Wisconsin income was therefore 3.8558 per cent of the total income for the year 1935. During the year 1936, the company paid a total of $17,900,134 in dividends. To the total dividends paid the commission applied the rate of 3.8558 per cent and so determined that the taxable dividend allocable to Wisconsin was $690,193.36. To this they applied the statutory rate of 2.5 per cent and found the dividend privilege tax, excluding interest and penalties to be $17,254.82. It is to be noted that the commission in ascertaining the amount of the dividend allocable to Wisconsin earnings applied the percentage of Wisconsin income to 1935 income instead of percentage of Wisconsin income to the surplus out of which the dividend was declared.

Upon the argument of the original cases in this court this phase of the case was not touched upon nor was it dealt with in the original opinion as the tax was held invalid on other grounds. On appeal the United States supreme court in remanding the case said (p. 446):

"Because the Wisconsin supreme court found the statute to be invalid as to foreign corporations in the position of the respondent it had no occasion to pass on certain claims relating to the application of the statute to the specific dividends here involved. We therefore remand the case for the determination of such questions as are open in the light of this opinion."

Both in the original briefs and upon motions after the filing of the *remittitur* in this court, the plaintiff contends that the assessment so made by the Tax Commission is void because the tax was calculated pursuant to the statutory presumption that the dividends in question were paid from the previous year's income and contained an exactly proportionate part of the Wisconsin income for such year. The presumption is contained in sub. (4) of the Dividend Tax Act. That part material here is as follows:

"In the case of corporations doing business within and without the state of Wisconsin, such tax shall apply only to dividends declared and paid out of income derived from business transacted and property located within the state of Wisconsin. The amount of income attributable to this state shall be computed in accordance with the provisions of chapter 71. [Income Tax Act.] *In the absence of proof to the contrary, such dividends shall be presumed to have been paid out of earnings of such corporation attributable to Wisconsin under the provisions of chapter 71, for the year immediately preceding the payment of such dividend.*"

The contention of the taxpayer is based upon the fact that by the law of its domicile the taxpayer was required to declare dividends in accordance with sec. 34 of the Delaware Corporation Law, as follows:

"The directors of every corporation created under this chapter, subject to any restrictions contained in its certificate of incorporation, shall have power to declare and pay dividends upon the shares of its capital stock either (a) out of its net assets in excess of its capital as computed in accordance with the provisions of sections 14, 26, 27, and 28 of this chapter, or (b) in case there shall be no such excess, out of its net profits for the fiscal year then current and/or the preceding fiscal year."

A subsequent section provides:

"No corporation created under the provisions of this chapter, nor the directors thereof shall pay dividends upon any share of the corporation except in accordance with the provisions of this chapter."

Upon the hearing before the Tax Commission the taxpayer introduced evidence as to the way in which the corporate business is transacted. This evidence is in no way contradicted or drawn in question and is as follows: Every store in Wisconsin, and the same is true of every store in every other state, has an account with a local bank in the town in which the store is located. All the money received from the sale of goods is deposited by the local manager of

the store in this bank. From this bank account payments are made by the store manager for local pay rolls, rents, advertising, and other local expenses only. The balance of the money is transmitted by the store manager to a regional bank maintained by the company in a large city near the store. These regional banks are purely conduits for the transmission of these funds to the treasurer's office in New York city, where the money is deposited to the general credit of the J. C. Penney Company in New York banks. The moneys after leaving the local banks completely lose their identity as moneys derived from any particular source. In 1934 and 1935 stores in Wisconsin transmitted their funds to the regional bank at Chicago, Illinois, and in 1936 to the regional bank at Milwaukee, Wisconsin, from which banks the funds were transmitted to New York. The moneys so deposited to the credit of the company in the New York banks are used to pay salaries, general overhead expenses of New York and other offices, taxes, and dividends, and checks are likewise drawn on these New York city bank accounts in payment of merchandise purchased from all sources and shipped to all stores of the company including those of Wisconsin. The local store manager has nothing whatsoever to do with the money that is realized from sale of merchandise in a local store except to pay the purely local expense items and to transmit the money to the regional bank. After it gets to the regional bank there is nobody in Wisconsin that has anything whatsoever to do with it.

The company had at the end of the calendar year 1934 a surplus of $29,279,543.14; at the end of the calendar year 1935, a surplus of $36,072,252.54; at the end of the calendar year 1936, a surplus of $37,095,176.77, which represented accumulated earnings of many years derived from all the states of the Union. The Wisconsin earnings and earnings for particular calendar years were not segregated and had lost their identity long before the dividends here involved

were paid. It is the contention of the taxpayer that the presumption created by the statute (1) is invalid and (2) has been rebutted. The taxpayer's contention requires us to consider the nature of the presumption. By its terms it operates only in the absence of evidence. Its effect is to require the taxpayer to go forward with the evidence. When evidence is introduced which rebuts it, the presumption ceases to operate because it rests upon no factual basis and takes no account of the way in which the transactions of the company are actually handled. Being a rebuttable presumption it is clearly within the power of the legislature to create it. Evidence having been introduced which rebuts it, the controversy must be determined upon general principles of law. It is obvious from a consideration of the facts that the so-called "trust fund" doctrine has no application to the facts in this case. The earnings of the corporation are in no sense held by it in trust for the taxing authorities of the state. The earnings are handled according to ordinary business practice. They are not earmarked or segregated or manipulated in any manner whatever. When the corporation declared its dividends in 1936, it drew upon its net assets in excess of its capital (surplus) as required by the law of Delaware. Its net profits for the year 1935 are to be found in its surplus at the end of the calendar year. When the company drew upon this surplus for the payment of the dividend declared, it did not draw upon 1935 income but on its entire surplus. It must be presumed, however, that when it drew upon the surplus which contained Wisconsin income, it drew upon Wisconsin income to the extent of the proportion which Wisconsin income bore not to the income for the year 1935 but to the whole amount of the surplus. The Tax Commission treated the matter as if the statutory presumption were conclusive and gave no weight or consideration to the evidence. In this the Tax Commission was in error. It is said in briefs of counsel that it would be a Herculean task to compute the

amount of surplus attributable to Wisconsin income. Inasmuch as the basis upon which the supreme court of the United States sustained the tax is that some part of the dividend is allocable to Wisconsin income, we see no escape from the conclusion that no tax can be levied until that fact is ascertained.

We conclude therefore that the presumption is valid; that it was rebutted by the evidence introduced in this case; that there is no evidence in the record from which the taxable amount of the dividend can be ascertained and the matter must be remanded to the trial court with directions to remand the record to the Commissioner of Taxation for further proceedings. It is held that the statute is valid; that the state of Wisconsin has jurisdiction to levy the tax; that the tax was not correctly computed; that the question as to the amount of the dividend which is taxable was not fully tried.

*By the Court.*—The judgment in each case is reversed with directions to the trial court to remand the record in each case to the Commissioner of Taxation for further proceedings as indicated in the opinion.