MIDCONTINENT BROADCASTING COMPANY OF WISCONSIN, INC., Appellant,

v.

DEPARTMENT OF REVENUE, Respondent-Petitioner.

Supreme Court

*No. 78-203. Argued September 4, 1980.—*
*Decided September 30, 1980.*

(Also reported in 297 N.W.2d 191.)

For the respondent-petitioner the cause was argued by *John E. Armstrong*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

For the appellant there were briefs by *Jeremy C. Shea* and *Ross & Stevens* of Madison, and *Allen I. Saeks, Edward M. Moersfelder* and *Leonard, Street & Deinard* of Minneapolis, Minnesota, and oral argument by *Allen I. Saeks*.

COFFEY, J. The Wisconsin Department of Revenue (Department of Revenue-Department) has appealed from a decision of the court of appeals[1] holding that a sale of tangible personal property, broadcasting equipment, by Midcontinent Broadcasting Company (Midcontinent) was an exempt "occasional sale" pursuant to secs. 77.54(7)[2] and 77.51(10)(a),[3] Stats. 1969.

Midcontinent, a Wisconsin corporation with its principal place of business in Madison, was engaged in the operation of two television channels and one radio sta-

---

[1] The decision of the court of appeals is reported at *Midcontinent Broadcasting Co. v. Dept. of Revenue*, 91 Wis.2d 579, 284 N.W.2d 112 (Ct. App. 1979).

[2] Sec. 77.54(7), Stats. 1969, provided:

"**General exemptions.** There are exempted from the taxes imposed by this subchapter:

". . .

"(7) The occasional sales of tangible personal property and services and the storage, use or other consumption in this state of tangible personal property, the transfer of which to the purchaser is an occasional sale, except that the exemption herein provided shall, in the case of motor vehicles, boats or aircraft registered or required to be registered in this state, be limited to motor vehicles, boats or aircraft transferred to the spouse, mother, father or child of the transferor and then only if such motor vehicle, boat or aircraft has been previously registered in this state in the name of the transferor and the person selling is not engaged in the business of selling the type of property for which exemption is claimed."

[3] Sec. 77.51(10)(a), Stats. 1969:

". . .

"(10) 'Occasional sales' includes:

"(a) Isolated and sporadic sales of tangible personal property or taxable services where the infrequency, in relation to the other circumstances, including the sales price and the gross profit, support the inference that the seller is not pursuing a vocation, occupation or business or a partial vocation or occupation or part time business as a vendor of personal property or taxable services. No sale of any tangible personal property or taxable service may be deemed an occasional sale if at the time of such sale the seller holds or is required to hold a seller's permit."

tion. Stations WKOW-TV and WTSO radio were located in Madison while WAOW-TV was headquartered in Wausau.

During the first quarter of the calendar year of 1967 Midcontinent began the sale of phonograph records as a special sales item to viewers of WKOW-TV and WAOW-TV on behalf of certain advertisers (sponsors). It was contemplated that such records would be made available for sale as a service to viewers of the two television channels in connection with particular sales promotions. Purchasers of the records would make payment either directly to the sponsor's home office or by sending the payment to Midcontinent who, in turn, forwarded the moneys to the promoters. Midcontinent, in compliance with the Wisconsin sales tax law, filed quarterly tax returns and paid a sales tax on those sales made at their stations.

Midcontinent secured a seller's permit for these record sales pursuant to sec. 77.52(7), Stats., and in their application for the permit, Midcontinent indicated that the merchandise to be offered for sale was phonograph records.

The record demonstrates that at the time Midcontinent applied for its seller's permit, sec. 77.51(10)(a), created by ch. 620, §48, Laws of 1961, read as follows:

"(10) 'Occasional sale' includes:

"(a) A sale of property not held or used by a seller in the course of an activity for which he is required to hold a seller's permit, provided such sale is not one of a series of sales sufficient in number, scope and character to constitute an activity requiring the holding of a seller's permit."

This section was subsequently repealed and recreated in ch. 154, §228, effective September 1, 1969. The new statute (as amended) included the following language: *"No sale of tangible personal property . . . may be deemed on occasional sale if at the time of such sale the*

*seller holds or is required to hold a seller's permit."* (Emphasis supplied), the subject of this controversy.

On September 30, 1969, Midcontinent entered into a formal sales agreement with Horizons Communication Corporation of Wisconsin (Horizons) and agreed to sell certain of its tangible and intangible assets "used or used for or intended to be used" in the operation of both WKOW-TV and WAOW-TV. The sale was subject to the approval of the transfer of the broadcasting licenses by the Federal Communications Commission (FCC) but the contract was silent as to the sales tax, as Midcontinent was unaware that the definition of "occasional sales" had been materially changed in 1969 and thus they were now potentially obliged to pay the tax under the amended statute.

The sale was consummated on October 28, 1970, after the FCC gave its approval to the transfer of the broadcasting licenses. Midcontinent paid Wisconsin income tax on a net capital gain of $1,990,441. Midcontinent, unaware of the amendment to sec. 77.51(10)(a), Stats., continued in their belief that they were not required to report the sale of tangible personal property and thus did not include the same in their sales tax return for the quarter ending November 30, 1970. It should be noted that Midcontinent did not sell phonogaph records and continued to hold the seller's permit even after the sale of the television channels.[4]

During the period Midcontinent sold phonograph records over the television channels, it is undisputed that the vast majority of their operating revenues were received from the sale of advertising from WAOW-TV, WKOW-TV and WTSO radio. Specifically, Midcontinent's total gross operating revenues were $7,834,314

---

[4] Midcontinent did not divest itself of ownership of WTSO radio. WTSO began to perform what it considered to be a taxable service, "production work" in the quarterly period ending May 31, 1972 and filed quarterly reports and paid sales tax thereon, but these acts are not material to this appeal.

from advertising sales through its two television stations and WTSO radio.[5] In comparison, Midcontinent's total taxable gross receipts during this period for the record sales were $26,716.09.[6] In the stipulated facts presented, the parties agreed that the sale of radio and television time to program sponsors has never been subject to a sales or use tax under Wisconsin law.

[5] The following is a table of Midcontinent's gross revenues from the sale of broadcast time and "miscellaneous items" from 1967 through October 28, 1970:

| Calendar Year | WKOW-TV and WAOW-TV | + | WTSO Radio | = | Total |
|---|---|---|---|---|---|
| 1967 | $1,370,200 | | $535,890 | | $1,906,090 |
| 1968 | 1,414,039 | | 544,023 | | 1,958,062 |
| 1969 | 1,503,893 | | 584,964 | | 2,008,857 |
| 1970 | 1,277,310 | | 603,995 | | 1,881,305 |
| TOTAL (to 10/28/70) | $5,565,442 | | $2,268,872 | | $7,834,314 |

[6] Midcontinent's sale and use tax returns for the period beginning with the quarter ending February 28, 1967 through the quarter ending November 30, 1970 reflected gross taxable receipts from record sales and net sales taxes owing thereon as follows:

| Quarter Ending | Gross Taxable Receipts | Net Sales Tax |
|---|---|---|
| February 28, 1967 | $ 8,069.50 | $ 237.25 |
| May 31, 1967 | 1,465.67 | 43.09 |
| August 31, 1967 | –0– | –0– |
| November 30, 1967 | 639.32 | 18.80 |
| February 29, 1968 | 8,672.33 | 254.97 |
| May 31, 1968 | 1,159.22 | 34.08 |
| August 31, 1968 | 602.91 | 17.73 |
| November 30, 1968 | –0– | –0– |
| February 28, 1969 | 238.98 | 8.35 |
| May 31, 1969 | –0– | –0– |
| August 31, 1969 | –0– | –0– |
| November 30, 1969 | 1,199.62 | 47.02 |
| February 28, 1970 | 1,890.54 | 74.11 |
| May 31, 1970 | 625.00 | 24.50 |
| August 31, 1970 | 477.00 | 18.70 |
| November 30, 1970 | 1,631.00 | 63.94 |
| TOTAL | $26,716.09 | $ 842.54 |

Almost a year later, on November 18, 1971, the Department of Revenue issued a notice of deficiency against Midcontinent and assessed an additional sales tax claiming that Midcontinent owed a sales tax on the gross receipts from the sale of the tangible personal property (broadcasting equipment) to Horizons. Midcontinent objected to the additional assessment and filed a petition for redetermination. The Department of Revenue denied the petition and Midcontinent sought review before the Wisconsin Tax Appeals Commission. At this time, the parties stipulated that the value of the tangible personal property located in Wisconsin and transferred to Horizons was $776,524.63 and that the sales tax on this amount, if due and owing, was calculated to be $31,060.90. The Tax Appeals Commission affirmed the Department's deficiency assessment and Midcontinent petitioned the circuit court for Dane County for review of this decision, pursuant to ch. 227, Stats., and claimed that:

1. The sale of tangible personal property "used or used for or intended to be used" in the operation of its television stations was an occasional sale and exempt from a sales tax because the sale of its television channels was a one time event and further its sales permit was intended to be used exclusively for the sale of records which was not a part of its primary business activity of radio and television programming and never was intended to cover the sale of assets used for the production of broadcasting and therefore not subject to the sales tax;

2. The imposition of a tax upon the sale of equipment necessary to the broadcasting of television programs amounts to an unconstitutional burden on interstate commerce in contravention of the United States Constitution (the commerce and supremacy clauses) ;

3. The imposition of a sales tax solely because Midcontinent held a sales permit at the time of the sale of the tangible assets constitutes a violation of the guar-

antee of the equal protection clauses in the United States and Wisconsin Constitutions.

The circuit court rejected Midcontinent's claims and affirmed the decision and order of the Tax Appeals Commission holding "[Midcontinent's] sale of its tangible personal property [broadcasting equipment] in question did not qualify as a tax exempt sale or exempt occasional sale under the provisions of Section 71.51(10)(a) of the Wisconsin Statutes." In its memorandum decision, the court found that sec. 77.51(10)(a), Stats., was not ambiguous stating "[f]or the holder of a seller's permit such as [Midcontinent], there is no such thing as an exempt occasional sale." Further, it held that the imposition of the tax herein did not run contrary to the standards set forth in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed.2d 326 (1977), for determining whether the exaction of a tax by the Revenue Department constituted an impermissible burden on interstate commerce.

Similarly, since the facts in this case are almost interchangeable with those in *Ramrod, Inc. v. Dept. of Revenue*, 64 Wis.2d 499, 219 N.W.2d 604 (1974), the court ruled that Midcontinent's equal protection argument was governed by the case law recited in *Ramrod*. Midcontinent took an appeal to the court of appeals and presented the same arguments raised before the circuit court. The court of appeals reversed the circuit court's decision and held that the instant sale was an "occasional sale" as that phrase is defined in sec. 77.51(10) (a), Stats., and did not reach the constitutional arguments. It stated:

"We . . . hold that where a taxpayer in a business whose primary sales are exempt from the sales tax requirements sells the assets of that business at a time when it holds a seller's permit for reasons having no connection or (as here) only a remote connection to the

business whose assets are being sold, the taxpayer is not a 'seller' who 'holds' a permit within the meaning of sec. 77.51(10) (a) defining 'occasional sale.' " *Midcontinent Broadcasting Co. v. Dept. of Revenue*, 91 Wis. 2d 579, 592–93, 284 N.W.2d 112 (Ct. App. 1979).

The Department of Revenue petitions this court for review of the court of appeals' decision.

*Issues*

1. Did the appellate court err in holding that the sale of assets, broadcasting equipment, by Midcontinent who possessed a seller's permit at the time of sale was an occasional sale within the meaning of that phrase in sec. 77.51(10) (a), Stats. 1969, and exempt from sales tax under sec. 77.54(7), Stats. 1969?

2. Does the imposition of the sales tax herein amount to an unconstitutional burden on interstate commerce?

3. Does denying Midcontinent the benefit of the occasional sales exemption solely on the basis of possession of a sales permit at the time of sale deprive it of the guarantees of the due process and equal protection clauses contained in the United States and Wisconsin Constitutions?

*Occasional Sale*

Midcontinent did not claim, either before the Tax Appeals Commission or the circuit or appellate courts, that it was not a "retailer" or that this sale was not a "sale at retail" for the purpose of imposition of the sales tax pursuant to sec. 77.52(1), Stats.[7] Rather, Midcon-

---

[7] Sec. 77.52(1), Stats., provides:

"**77.52 Imposition of selective retail sales tax.** (1) For the privilege of selling, leasing or renting tangible personal property, including accessories, components, attachments, parts, supplies and materials, at retail a tax is hereby imposed upon all retailers at the rate of 3% of the gross receipts from the sale, lease or rental of tangible personal property, including accessories, components,

tinent claims that its sale of business assets, broadcasting equipment, was a one time sale and thus an exempt occasional sale pursuant to secs. 77.54 (7) and 77.51 (10) (a), Stats. 1969.

Sec. 77.54, Stats., sets out several general exemptions from the sales and use taxes. The applicable occasional sales exemption as contained in the 1969 version of sec. 77.54 (7), Stats., reads as follows:

"(7) *The occasional sales of tangible personal property and services and the storage, use or other consumption in this state of tangible personal property, the transfer of which to the purchaser is an occasional sale*, except that the exemption herein provided shall, in the case of motor vehicles, boats or aircraft registered or required to be registered in this state, be limited to motor vehicles, boats or aircraft transferred to the spouse, mother, father or child of the transferor and then only if such motor vehicle, boat or aircraft has been previous-

attachments, parts, supplies and materials, sold, leased or rented at retail in this state on or after February 1, 1962; but beginning on September 1, 1969 the rate of the tax hereby imposed shall be 4%."

The statutes set out inclusory definitions of "sale at retail" and "retailer" in sec. 77.51(4) and 77.51(7), Stats., which in pertinent part read:

"(4) 'Sale', 'sale, lease or rental', 'retail sale', 'sale at retail', or equivalent terms include any one or all of the following: the transfer of the ownership of, title to, possession of, or enjoyment of tangible personal property of, or enjoyment of tangible personal property or services for use or consumption but not for resale as tangible personal property or services and includes:

". . .

"(7) 'Retailer' includes:

"(a) Every *seller* who makes any sale of tangible personal property or taxable service. (Emphasis supplied.)

". . .

"(9) 'Seller' includes every person selling, leasing or renting tangible personal property or selling, performing or furnishing services of a kind the gross receipts from the sale, lease, rental, performance or furnishing of which are required to be included in the measure of the sales tax."

ly registered in this state in the name of the transferor and the person selling is not engaged in the business of selling the type of property for which exemption is claimed." (Emphasis supplied.)

Midcontinent claims that the sale of its broadcasting equipment herein was an occasional sale, pursuant to sec. 77.51(10)(a), Stats. 1969, which provides:

"(a) Isolated and sporadic sales of tangible personal property or taxable services where the infrequency, in relation to the other circumstances, including the sales price and the gross profit, support the inference that the seller is not pursuing a vocation, occupation or business or a partial vocation or occupation or part time business as a vendor of personal property or taxable services. *No sale of any tangible personal property or taxable service may be deemed an occasional sale if at the time of such sale the seller holds or is required to hold a seller's permit.*" (Emphasis supplied.)

Midcontinent asserts that since the tangible personal property sold was used in its primary business activity of selling time to sponsors of programming, an activity not subject to Wisconsin sales tax, it was therefore not required to hold a seller's permit for this business venture. Midcontinent further argues that its record sale enterprise was solely for the convenience of its viewers and listeners. Hence, Midcontinent concludes that it neither held nor was required to hold a seller's permit for the sale of its business assets and that the language contained in the exception to the definition of occasional sale should not apply.[8]

---

[8] Midcontinent cites a California decision, *Glass-Title Industries, Inc. v. State Bd. of Equalization,* 266 Cal. App.2d 691, 72 Cal. Rptr. 244 (1968), as support for the proposition that an entity can make an occasional sale while possessing a seller's permit. This case is not persuasive inasmuch as the statutory definition of occasional sale involved therein allowed for such a result provided the seller was in fact *not required to hold* a seller's permit. Sec. 77.51(10)(a), Stats. 1969, provides that a sale is not

The Department of Revenue, on the other hand, contends that since Midcontinent held a seller's permit at the time of the sale of the television channels to Horizons, the transfer cannot be determined to be an exempt occasional sale under sec. 77.54(7), Stats. 1969, as sec. 77.51(10)(a) clearly and unambiguously excepts such sale from the occasional sales exemption: *"No sale of any tangible personal property of taxable service may be deemed an occasional sale if at the time of such sale the seller holds or is required to hold a seller's permit."*

The sole issue presented is whether the sale from Midcontinent to Horizons falls within the definition of an exception to the occasional sales exemption as recited in sec. 77.51(10)(a), or specifically, does Midcontinent's holding of a seller's permit at the time of transfer disqualify it from this exemption.

Tax exemptions are purely matters of legislative grace and the statutes granting the same are to be given a strict but reasonable construction against taxpayers who claim under them. A taxpayer who claims an exemption must show that the terms thereof clearly apply to him. *Dept. of Revenue v. Bailey-Bohrman Steel Corp.,* 93 Wis. 2d 602, 606–07, 287 N.W.2d 715 (1980); *Sisters of St. Mary v. City of Madison,* 89 Wis.2d 372, 379, 278 N.W. 2d 814 (1979); *Three Lions Supper Club v. Dept. of Revenue,* 72 Wis.2d 546, 548, 241 N.W.2d 190 (1976); *Ramrod, Inc. v. Dept. of Revenue, supra* at 504; *Columbia Hospital Assoc. v. Milwaukee,* 35 Wis.2d 660, 668, 151 N.W.2d 750 (1967); *Moore Motor Freight Lines v. Dept. of Taxation,* 14 Wis.2d 377, 386, 111 N.W.2d 148 (1961); *Comet Co. v. Dept. of Taxation,* 243 Wis. 117, 123, 9 N.W.2d 620 (1943).

This court has construed the meaning of sec. 77.51 (10)(a), Stats. 1969, and particularly the language con-

---

an occasional sale if the seller *"holds* or is required to hold a seller's permit" (emphasis supplied) at the time of sale.

tained in the last sentence of this statute in two prior cases, *Three Lions Supper Club v. Dept. of Revenue, supra,* and *Ramrod, Inc. v. Dept. of Revenue, supra.* In *Three Lions* the Department sought to impose a sales tax on the sale of furnishings, equipment and other personal property[9] sold at the time of the transfer of the taxpayer's supper club business. The taxpayer was required to hold a seller's permit for the operation of the supper club and had surrendered the permit to a representative of the Department of Revenue one day before the sale. The Department had not canceled the seller's permit prior to the closing and contended that a taxpayer is deemed to "hold" a seller's permit within the meaning of that term in the "exception to the occasional sales exemption clause" until canceled. This court rejected the Department's claim and utilized the rule of construction that where a nontechnical word such as "hold" is used in this statute and not specifically defined, it is to be given its usual, ordinary and accepted meaning, *see:* sec. 990.01(1); *Milwaukee County v. ILHR Dept.,* 80 Wis.2d 445, 450, 259 N.W.2d 118 (1977); *Falkner v. Northern States Power Co.,* 75 Wis.2d 116, 123, 248 N.W.2d 885 (1977), thus, this court looked to the dictionary definition of this term and stated the word "hold" relates to possession and therefore as used in defining "occasional sales" it makes *possession* rather than *cancellation* the controlling factor. *Three Lions Supper Club v. Dept. of Revenue, supra* at 550–51. Hence, under this court's construction of the word *hold* as meaning *possession,* Midcontinent, having had possession of the seller's permit at the time of sale, was "holding" the seller's permit within the meaning of the exception to the occasional sales exemption in sec. 77.51(10)(a).

---

[9] Inventory was not included in the disputed assessment. *Three Lions Supper Club v. Department of Revenue,* 72 Wis.2d 546, 547, 241 N.W.2d 190 (1976).

The facts in *Ramrod* are similar to the fact situation in this case. There, the Department sought to impose a sales tax on the sale of tangible personal property (machinery and equipment) transferred with the sale of the taxpayer's dry-cleaning business. The taxpayer had been issued a seller's permit and was required to hold it pursuant to sec. 77.52(2)(a)6 and 77.52(12), Stats., only during the period he actively engaged in providing laundry, dry-cleaning, pressing or dyeing services. He ceased operation of the dry-cleaning business on the day of the sale but failed to surrender his seller's permit prior to or at the time of the sale. Ramrod claimed, as does Midcontinent, that the last sentence of sec. 77.51(10)(a) was not applicable as their seller's permit was issued only for laundry, dry-cleaning, pressing and dyeing services offered and not for the purpose of selling dry-cleaning equipment. We rejected this claim on the basis that seller's permits are "general in nature" and are not limited to the particular type of products or services described in the application on file. *Ramrod, Inc., supra* at 506 (quoting the decision of the trial court with approval). With this statement, we held that a seller's permit indicates that a taxpayer who is in the business of selling tangible personal property during the period he is in possession of the permit falls within the meaning of sec. 77.51(10)(a), Stats. 1969, and thus the occasional sale exemption does not apply.

We concur in the interpretation given the exception to the definition of occasional sales by this court in *Three Lions Supper Club, supra,* and *Ramrod, Inc., supra,* that one in possession of a seller's permit at the time of sale is "holding" a seller's permit for the sale of all business assets. Since Midcontinent possessed a seller's permit at the time of sale, it came within the confines of sec. 77.51(10)(a), Stats. 1969. The fact that the application for the permit stated the type of

taxable merchandise that Midcontinent intended to pay a sales tax on was exclusively for record sales is irrelevant for in *Ramrod, Inc., supra,* we held the permit to be "general in nature."

Midcontinent convinced the appellate court to distinquish this case from *Ramod, Inc., supra,* on the basis that the taxpayer therein was required to hold a seller's permit to carry on its *primary* business activities, drycleaning. *Ramrod* is factually distinguishable on the primary business theory, but the distinction is without substance since the holding of sales tax liability in that case was not based on this fact. Rather, the holding in *Ramrod, Inc., supra,* was based on the dry-cleaner's possession of a seller's permit considered "general in nature" and thus applies also to the sale of personal business property.

The construction given the language of sec. 77.51 (10) (a), Stats., in *Three Lions Supper Club, supra,* and *Ramrod, Inc., supra,* is controlling and thus we hold that Midcontinent Broadcasting Company has failed to point to an express provision in the sales tax statute entitling them to an exemption in their sale of the broadcasting equipment. Also, it is a long-established rule of statutory construction that tax statutes are to be strictly construed against the taxpayer for they are exclusively matters of legislative grace. Further, we hold that our construction is reasonable in the light of the fact that a seller who ceases to actively operate as a seller of tangible personal property may surrender the permit as required by sec. 77.52 (12), and thus avoid a sales tax on a subsequent transfer of business assets. *Three Lions Supper Club v. Dept. of Revenue, supra.* In this case, Midcontinent could have avoided a sales tax liability by surrendering the sales permit prior to the transfer of its television stations, if in fact it was not required to hold such permit in relation to its other activities. *Id.*

*Commerce Clause*

Midcontinent contends that the imposition of the sales tax amounts to an impermissible burden upon interstate commerce in contravention of the commerce clause in the United States Constitution.[10] As such, it claims that the sale of its television stations is exempt from taxation, pursuant to sec. 77.54(1), Stats. This section provides

**"General exemptions.** There are exempted from the taxes imposed by this subchapter:

---

[10] Art. I, sec. 8, cl. 3 of the United States Constitution provides as follows:

"The Congress shall have power

". . .

"To regulate commerce with foreign nations, and among the several states, and with the Indian tribes;"

In essence, Midcontinent's claim involves the prohibiting effect of the commerce clause which comes about by virtue of the Supremacy Clause: "This Constitution, and the laws of the United States which shall be made in pursuance thereof; . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding." Art. VI, United States Constitution, and decisions of the United States Supreme Court. *See: e.g., Cooley v. Board of Wardens,* 53 U.S. (12 How.) 299 (1852); *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1 (1824). As was stated by the petitioners in *McGoldrich v. Berwind-White Co.,* 309 U.S. 33, 35, 60 S. Ct. 388, 84 L. Ed. 565 (1940):

"A state taxing statute can be invalidated under the commerce clause only if it subjects interstate commerce to such a burden as is tantamount to an interference with the power of Congress to regulate commerce among the several States. *Gibbons v. Ogden,* 9 Wheat. 1. Whether it does interfere with interstate commerce is a question of fact. *Hump Hairpin Co. v. Emmerson,* 258 U.S. 290, 295; *Kansas City Ry. Co. v. Kansas,* 240 U.S. 227, 233."

This statement was adopted by the court in paraphrase at p. 45 of the opinion. *Accord: Washington Department of Revenue v. Stevedoring Assn.,* 435 U.S. 734, 749, 98 S. Ct. 1388, 55 L. Ed.2d 682 (1978).

"(1) *The gross receipts from the sale* of and the storage, use or other consumption *in this state of tangible personal property* and services *the gross receipts from the sale of which,* or the storage, use or other consumption of which, *this state is prohibited from taxing under the constitution or laws of the United States* or under the constitution of this state." (Emphasis supplied.)

Midcontinent's argument is based upon the premise that the television and radio broadcasting industries are engaged in interstate commerce. *See: Fisher's Blend Station v. State Tax Commission,* 297 U.S. 650, 56 S. Ct. 608, 80 L. Ed. 956 (1936); *Allen B. Dumont Laboratories v. Carroll,* 184 F.2d 153 (3d Cir. 1950). From this premise, Midcontinent asserts that the sale of its broadcasting equipment used to create interstate transmissions of radio waves is therefore an integral part of its interstate activity. Furthermore, Midcontinent claims that the necessity of FCC approval for the transfer of broadcasting licenses makes a sale of the company's assets clothed with the protection afforded an interstate commerce transaction.

We recognize that the television broadcasting industry is necessarily by its very nature a business which is frequently involved in interstate commerce in programming and broadcasting network television programs. *Fisher's Blend Station v. State Tax Commission, supra* and *Allen B. Dumont Laboratories v. Carroll, supra.* We do not agree with Midcontinent's claim that the necessity of FCC approval for the transfer of its broadcasting licenses transforms the sale of the broadcasting equipment into an interstate transaction since the conveyance of the broadcasting licenses is "separable and distinct" from the sale of such equipment. It is evident that one desiring to dispose of his broadcasting equipment could transfer the equipment to another broadcaster already in possession of a license without

the necessity of FCC approval. We conclude that the instant sale and/or transfer of the tangible assets of WKOW-TV and WAOW-TV to Horizon was entirely "separable and distinct" from that aspect of the broadcasting business involved in interstate commerce.

Midcontinent, in its brief, does not refer us to any cases which hold that the sale of assets (*i.e.*, broadcasting equipment) of an interstate business is an interstate transaction, and our research has disclosed none. Rather, Midcontinent, citing *Midwestern Gas Transmission Co. v. Dept. of Revenue*, 84 Wis.2d 261, 267 N.W. 2d 253 (1978), and *Helson and Randolph v. Kentucky*, 279 U.S. 245, 49 S. Ct. 279, 73 L. Ed. 683 (1929), appears to argue that broadcasting equipment is a "vehicle"[11] of interstate commerce and therefore its sale is an interstate transaction.

In *Midwestern Gas Transmission Co., supra,* the taxpayer was engaged in the business of transporting and selling natural gas through pipelines. The gas line ran from the Manitoba, Canada and Minnesota border to Marshfield, Wisconsin. The taxpayer maintained two compressor stations in Wisconsin to move the gas through its pipeline. At each station a small amount of gas was removed from the line to fuel the engines which ran the compressors. The gas continually in transit passed through the pipeline to the compressors without entering a storage tank. Thus, the *use of natural gas* to run a vehicle in interstate commerce (the compressors located in Wisconsin) and the interstate transaction in this case were one and the same occurrence. The Department sought to impose a tax on the gas in transit used to power the compressors. This court held that the imposition of a use tax on this commodity constituted

---

[11] "Vehicle" is defined as: "2. Anything through or by which something, as thought, power, information, or the like is conveyed, transmitted, expressed or achieved: . . ." *The American Heritage Dictionary of the English Language,* 1419 (1978).

an impermissible burden on interstate commerce. Specifically, we ruled that Midwestern Gas Company's consumption of gas to fuel the engines providing the pressure necessary to propel natural gas through the pipeline without entering a storage tank in Wisconsin was an integral part of the process of interstate commerce which did not have a substantial nexus with this state. Thus, it remained immune from Wisconsin taxation by reason of the commerce clause.

In *Midwestern, supra,* the court reasoned that the taxable event was *use* of natural gas to run a vehicle of interstate commerce (the compressors) in the following language: "Here, the department seeks to impose a *use* tax on that amount of natural gas consumed in engines which provide the pressure necessary to propel the great bulk of the taxpayer's gas through interstate commerce." (Emphasis supplied.) *Id.* at 271. In this case, the taxable event is the sale of broadcasting equipment. Although Midcontinent's broadcasting equipment may be a vehicle of interstate commerce when generating interstate transmissions of radio waves, the tax herein, as contrasted with the use tax in *Midwestern, supra,* is imposed upon the sale of television apparatus and not the use or consumption of energy (electricity) to transmit radio waves through interstate commerce. Since *use* of broadcasting equipment is distinct from its sale, as use denotes employment of the equipment to perform a specific function, *i.e.,* transmitting radio waves, so also is a *sale* of Midcontinent's broadcasting equipment separable and distinct from interstate commerce, as this equipment is in interstate commerce only during the period of time it is in use (operation). The taxable event of the sale of Midcontinent's television equipment and the interstate facet of Midcontinent's business, transmitting radio waves, are not one and the

same occurrence as in *Midwestern,* and thus *Midwestern* is distinguishable.

The *Helson* case is similarly distinguishable. In *Helson* the taxpayers, citizens and residents of Illinois, were in the business of operating a ferry on the Ohio River between the states of Illinois and Kentucky. The gasoline used to fuel the vessel's engines was purchased in Illinois. However, 75% of this gas was consumed within Kentucky's borders. Kentucky sought to tax that portion of the ferry's gasoline consumed in its waters. Stating that the fuel was no less an instrumentality of interstate commerce than the boat itself, the court described the tax as an exaction on the privilege of *using* an instrumentality (boat *and* gas) of interstate commerce. Consequently, the tax was struck down as an impermissible burden on interstate commerce.[12]

Again, employment of a substance (gas) characterized as a vehicle of interstate commerce supplied the requisite interstate transaction. To repeat, no such use is involved in this case.

The United States Supreme Court has adopted a practical approach to aid in the resolution of determining whether a particular taxable event is involved in interstate commerce. According to this analysis, the nature of the activity taxed is determined by assessing whether the tariff either discriminates against interstate commerce or subjects such commerce to a risk of double or multiple taxation. *See: e.g., Utah Tax Comm. v. Pacific Pipe Co.,* 372 U.S. 605, 83 S. Ct. 925, 10 L. Ed.2d 8 (1963) ; *Alaska v. Artic Maid,* 366 U.S. 199, 81 S. Ct. 929, 6 L. Ed.2d 227 (1961) ; *Harvester Co. v. Dept. of Treasury,* 322 U.S. 340, 64 S. Ct. 1019, 88 L. Ed. 1313 (1944) ; *Dept. of Treasury v. Wood Corp.,* 313 U.S. 62,

[12] The doctrine that a tax on the privilege of engaging in interstate commerce is unconstitutional per se has since been disavowed. *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed.2d 326 (1977).

61 S. Ct. 805, 85 L. Ed. 1188 (1941); *McGoldrick v. Berwind-White Co.*, 309 U.S. 33, 60 S. Ct. 388, 84 L. Ed. 565 (1940); *Western Live Stock v. Bureau*, 303 U.S. 250, 58 S. Ct 546, 82 L. Ed. 823 (1938).

The application of this analysis to the case herein leads us to but one conclusion, Midcontinent's sale of its broadcasting equipment was a transaction separable from its activity involving interstate commerce, broadcasting. The taxable event here involved, is the "sale" of tangible personal property "located in Wisconsin" at the time of sale. Hence, this incident was beyond the taxing power of any other state and thus did not present the risk of multiple taxation. Since the tax is imposed upon Midcontinent as an intrastate seller rather than an interstate broadcaster, and is imposed only upon those who engage in the privilege of selling at retail in this state, sec. 77.52(1), Stats., we know of no logical reason to support the contention that it interferes with or impedes interstate commerce. See: *McGoldrich v. Berwind-White Co., supra.* We hold that the sale of Midcontinent's Broadcasting Equipment is separable from its business of broadcasting and as such is not subject to the prohibitions of the commerce clause.

But we do not rest our decision on this conclusion alone. The parties have briefed this case on the assumption that the taxable event was an interstate transaction. Assuming that this is so, we conclude that the burden placed upon interstate commerce by imposition of this tax is not of constitutionally impermissible dimensions.

Both Midcontinent and the Department of Revenue in their briefs utilized the analysis set out in *Complete Auto Transit, Inc. v. Brady, supra,*[13] to determine wheth-

---

[13] *Complete Auto Transit, Inc. v. Brady* was subsequently reaffirmed in *Japan Line Ltd. v. County of Los Angeles,* 441 U.S. 434, 99 S. Ct. 1813, 60 L. Ed.2d (1979), and *Washington Dept. of Revenue v. Stevedoring Assn.,* 435 U.S. 734, 98 S. Ct. 1388, 55 L. Ed.2d 682 (1978).

er or not the imposition of the tax on the sale of Midcontinent's broadcasting equipment constitutes an impermissible burden upon interstate commerce.

In *Midwestern Gas Transmission Co. v. Revenue Dept.*, we summarized the import of *Complete Auto Transit, Inc. v. Brady, supra:*

"In [*Complete Auto Transit, Inc. v. Brady*] the Court abandoned two tests which looked primarily to the language of the taxing statute in favor of an analysis of the economic consequence the tax would have on interstate commerce. The Court also indicated four criteria which a taxing statute must satisfy to be valid under this analysis: (1) the activity taxed must have a substantial nexus with the state; (2) the tax must be fairly apportioned; (3) the tax must not discriminate against interstate commerce; and (4) the tax must be fairly related to services provided by the state. *Complete Auto Transit, Inc. v. Brady, supra* at 277, 287; . . ." *Midwestern Gas Transmission Co. v. Revenue Dept., supra* at 270.

The issue of discrimination against interstate commerce has been previously discussed and there is no question of apportionment of a tax since, as noted above, the state of Wisconsin alone has the authority to tax the sale herein. We need only be concerned with whether the activity the Department seeks to tax (sale) has a substantial nexus with this state and whether the tax is fairly related to services provided by this state.

We note that the issue of the relation between the tax and the services provided by the state is generally presented when a particular state seeks to tax a foreign corporation. *National Geographic v. Cal. Equalization Bd.*, 430 U.S. 551, 561, 97 S. Ct. 1386, 51 L. Ed.2d 631 (1977); *Northwest Airlines, Inc. v. State,* 77 Wis.2d 152, 159, 252 N.W.2d 337 (1977). In such a context, the prohibitory effect of the commerce clause becomes mixed with the restrictions of the due process clause as due

process precludes the respective states from taxing extra state corporate activities. *Id.* However, if "the state has given anything for which it can ask return," *Wisconsin v. J. C. Penney Co.,*[14] 311 U.S. 435, 444, 61 S. Ct. 246, 85 L. Ed. 267 (1941), or "the facts demonstrate 'some definite link, some minimum connection, between [the State and] the *person . . .* it seeks to tax,' *Miller Bros. v. Maryland,* 347 U.S. [341] at 344–345. (Emphasis added)." *National Geographic v. Cal. Equalization Bd., supra* at 561, the tax will be deemed fairly related to services provided by the taxing state. Moreover, there need not be a relationship between a seller's activity and the taxable event, rather, all that is necessary is a nexus relationship between the seller and the taxing state. *Id.* at 560. The taxpayer's enjoyment of various amenities such as fire and police protection is a sufficient nexus to satisfy the due process requirement. *Id.* at 561; *Complete Auto Transit, Inc. v. Brady, supra* at 286.

██
The fact that Midcontinent is, and was, a domestic corporation with offices in this state at the time of the instant sale, together with the fact that the transfer occurred in Wisconsin demonstrates that Midcontinent enjoyed and presently enjoys a number of substantial benefits provided by this state. Clearly included among such advantages are police, fire and health protection and transportation and educational facilities. Thus, since the state has provided the noted services, *i.e.,* fire, police and health protection, etc., there exists a relationship between Midcontinent and Wisconsin and this relationship is sufficient to satisfy the nexus requirements of the due process and commerce clauses. Thus, even if we

---

[14] *J. C. Penney Co. v. Tax Commission,* 233 Wis. 286, 289 N.W. 677 (1940), after remand from the Supreme Court, 238 Wis. 69, 298 N.W. 186 (1941).

were to agree with Midcontinent's theory of the case and assume that Midcontinent's sale of broadcasting equipment was an interstate commerce transaction, we hold that the four criteria set forth in *Complete Auto Transit, Inc. v. Brady, supra,* are satisfied herein and that the imposition of the sales tax does not amount to an impermissible burden on interstate commerce.

*Equal Protection*

Midcontinent contends in essence that the imposition of a sales tax upon it solely because it held a sales permit at the time of the sale of the television stations constitutes a violation of the equal protection clause contained in the United States and Wisconsin Constitutions.[15] They claim that the occasional sales exemption creates two classes of broadcasters, those who possess sales permits and those who do not. Further, they contend there is no rational relation between the criteria for the classification (possession of a sales permit) and the privilege of selling assets unrelated to the sale of property (phonograph records) described in the application for the permit.

In *Simanco, Inc. v. Dept. of Revenue,* 57 Wis.2d 47, 54, 55, 57, 203 N.W.2d 648 (1973), this court set out the burden that a taxpayer must meet before a taxing statute creating an exemption from taxation will be

---

[15] United States Constitution amend. XIV; Wisconsin Constitution, art I, §1. "Art. I, sec. 1 of the Wisconsin Constitution is substantially equivalent to the due process and equal protection clauses of the fourteenth amendment to the United States Constitution. *State ex rel. Sonneborn v. Sylvester,* 26 Wis.2d 43, 49, 132 N.W.2d 249 (1965). *State ex rel. Cresci v. H&SS Dept.,* 62 Wis.2d 400, 414, 215 N.W.2d 361 (1974)." *State ex rel. Fort Howard Paper Co. v. Wis. Lake Dist. Bd. of Review,* 82 Wis.2d 491, n. 10, p. 511, 263 N.W.2d 178 (1978).

struck down as violative of the guarantee of equal protection:

"There is, however, a strong presumption that legislative enactments are constitutional, and the burden on one asserting the unconstitutionality of a properly enacted statute is heavy indeed. *Just v. Marinette County* (1972), 56 Wis.2d 7, 26, 201 N.W.2d 761; *State ex rel. Warren v. Reuter* (1969), 44 Wis.2d 201, 211, 170 N.W. 2d 790.

"Moreover, where a tax measure is involved, the presumption of constitutionality is strongest. The courts have given recognition to the essentiality of taxation in preserving an ordered society, and there is implicit recognition in judicial decisions that the principle of absolute equality and complete congruity of the treatment of classifications is impossible and must be sacrificed in the interests of preserving the governmental function.

"This court has recognized that the equal-protection clause, unless apparent misclassifications are gross indeed, is of little moment in determining the constitutionality of a state tax. In *Hillside Transit Co. v. Larson* (1954), 265 Wis. 658, 583, 62 N.W.2d 722, the position of the court was well-summarized by Mr. Justice CURRIE, who stated:

" '. . . a legislature has more leeway in granting exemptions in taxation measures than it does in regulatory measures under its police power without running athwart the equal-protection-of-the-laws clause of the Fourteenth amendment.'

" . . .

"Only if a challenger can show that the classification is arbitrary and has no reasonable purpose or relationship to the facts or a justifiable and proper state policy will a legislative classification fall on the grounds of a denial of equal protection. *Dandridge v. Williams* (1970), 397 U.S. 471, 90 Sup. Ct. 1153, 25 L. Ed.2d 491; *Morey v. Doud* (1957), 354 U.S. 457, 77 Sup. Ct. 1344, 1 L. Ed.2d 1485; *Vanden Broek v. Reitz* (1971), 53 Wis. 2d 87, 191 N.W.2d 913; *State ex rel. Schopf v. Schubert* (1970), 45 Wis.2d 644, 173 N.W.2d 673." *See also: Department of Revenue v. Moebius Printing Co.*, 89 Wis.2d 610, 624–26, 279 N.W.2d 213 (1979).

This court answered an equal protection challenge to sec. 77.51(10)(a), Stats. 1969, in *Ramrod, Inc., supra.* There we held that administrative convenience supplied a sufficient rational basis to justify the classification made by this statute. We stated:

"Appellant argues that under no circumstances can administrative convenience itself justify the imposition of this tax. Respondent argues that the legislature has drawn a distinction between those taxpayers who hold sales permits and those who do not due to the practicality of administration. Administrative convenience can and does in the eyes of the legislature often serve as a valid basis upon which it is determined that a tax should be levied on a particular transfer.

". . .

"The object of the tax in this case is to raise revenues as it was in *Rapid Transit Corp., supra,* and appellant's arguments have failed to rebut the strong presumption of constitutionality accorded such tax provisions. The legislature has the power to define and limit tax exemptions in any reasonable manner they see fit. Appellant stands in the same position as any businessman who operates under the requirements of a sales permit.

"The trial court correctly concluded that '. . . a rational basis exists to justify the classification made in the last sentence of sec. 77.51(10)(a), Stats., which denied an occasional sale exemption to the holder of a seller's permit.' It could also be observed that such a provision serves to compel one who is not actively operating as a seller to 'forthwith surrender' his permit as he is required to do under sec. 77.52(12), Stats. Thus, in addition to the purpose of administrative convenience, the new law also served the purpose of compelling businessmen to otherwise comply with the law." *Id.* at 510, 511–12.

Midcontinent attempts to distinguish *Ramrod, Inc.,* on the basis that the taxpayer, Ramrod, could not lawfully conduct his primary business without a seller's permit. This is a distinction without substance as our

ruling in *Ramrod* was premised on a reasonable basis for the classification, namely, administrative convenience. Indeed, this rationale is particularly applicable here since Midcontinent failed to surrender its sales permit, either before, during or after the sale of its television stations as required by sec. 77.52(12), Stats. Admittedly, Midcontinent retained ownership of WTSO radio but this station did not engage in an activity requiring possession of a seller's permit until 1972, some two years after the sale.

Midcontinent has failed to meet its burden of proving beyond a reasonable doubt that the legislature had no rational basis for enacting the exception to the occasional sales exemption in sec. 77.51(10)(a), Stats. 1969. *Dept. of Revenue v. Moebius Printing Co., supra.* We hold that sec. 77.51(10)(a) does not violate Midcontinent's constitutional right to equal protection of the laws.

*By the Court.*—The decision of the court of appeals is reversed; judgment of the circuit court affirmed.